# EXHIBIT A

Steven K. Eisenberg ·˙
Thomas E. Shea ·
Jacqueline F. McNally ·˙·
David M. Lambropoulos ·˙
Margaret Cascino ·
Michelle H. Badolato ·˙·
M. Troy Freedman ·
Evan Barenbaum ·˙
Stacey A. Weisblatt ·
Salvatore Carollo ·˙
Leslie J. Rase ·
Andrew J. Marley ·˙
Michael J. Reilly ·
Alexandra Saites ·
Lucas M. Anderson ·˙
William E. Miller ·˙
John M. Kolesnik ·˙
Justin M. Strausser ·˙
Thomas F. Gallagher ·˙
Edward J. McKee ·˙
Todd N. Robinson ·
Christopher M. Camporeale ·
Stefanie Malone-Zeitz ·˙
Frank J. Keenan ·˙

_____

Richard F. Stern ·⁺

· Admitted to practice in PA
˙ Admitted to practice in NJ
* Admitted to practice in NY
⁺ Admitted to practice in MD
· Of Counsel



Stern&Eisenberg | PC

### Stern & Eisenberg, PC
*www.sterneisenberg.com*

01/18/2016

1581 Main Street
Suite 200
Warrington, PA 18976
(215) 572-8111
Facsimile: (215) 572-5025

1040 N. Kings Highway
Suite 407
Cherry Hill, New Jersey 08034
(609) 397-9200
Facsimile: (856) 667-1456

485 Route 1 South
Suite 110
Iselin, NJ 08830
(732) 582-6344
Facsimile: (732) 726-8719

4976 Transit Road #2
Depew, NY 14043
(732) 582-6344
Facsimile: (732) 726-8719

## VIA Certified and Regular Mail
Sandra Lopaz
1612 Washington Street
Cinnaminson, NJ 08077

**Re:**   **VERIFICATION OF DEBT AS REQUIRED BY 15 U.S.C. 1692(g)**

| | |
|---|---|
| **Property:** | 1612 Washington Street, Cinnaminson, NJ 08077 |
| **Original Creditor:** | Freedom Mortgage Company |
| | P.O. Box 8068 |
| | Virginia Beach, VA 23450 |
| **Present Creditor:** | UMB Bank, National Association, not in its individual |
| | capacity but solely as legal title trustee of MART Legal |
| | Title Trust 2015-NPL1 |
| | c/o BSI Financial Services |
| | 314 South Franklin Street, P.O. 517 |
| | Titusville, PA 16354 |
| **Loan Servicer:** | BSI Financial Services |
| | 314 S. Franklin Street |
| | Titusville, PA 16354 |
| **Current Loan Number:** | 371679888 |

Pursuant to your request please find enclosed a copy of the original Note, original Mortgage, and the subsequent Assignments of Mortgage. I have provided the names and addresses of your original creditor, your present creditor and the lender's servicer, respectively.

THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
(if first communication)
THIS FIRM IS A DEBT COLLECTOR.
(all subsequent communications)

Please note that the copies enclosed include your original loan number. This letter and enclosures constitutes **validation** of the debt pursuant to federal law. Please be guided accordingly.

Very truly yours,

John M. Kolesnik, Esquire

Enclosures

THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
(if first communication)
THIS FIRM IS A DEBT COLLECTOR.
(all subsequent communications)

MIN          1000730-0082948274-4
MERS Telephone: (888) 679-6377

**Multistate**                           NOTE

| PHA Case No. |
|---|
| 351-5289431-703 |

November 13, 2008
                    [Date]

1612 Washington St
Cinnaminson, NJ 08077
[Property Address]

# ORIGINAL

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
Freedom Mortgage Corporation

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
One Hundred Fifty Four Thousand Six Hundred Sixty and 00/100

Dollars (U.S. $ 154,660.00            ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of Six and One-Half
percent (          6.500  %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
January          , 2009          . Any principal and interest remaining on the first day of December
2038          , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at P.O. Box 8068, Virginia Beach, VA  23450-8068

                                        or at such place as Lender may designate in writing
by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $          977.56          . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for
the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a
partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in
writing to those changes.

0082948274

FHA Multistate Fixed Rate Note - 10/95

VMP® -4R (0210)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 2    60401435          Initials:



## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four and No-Thousandths percent ( 4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

| _____ (Seal) | _____ (Seal) |
| Sandra Lopaz -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | Pay to the order of _____ without (Seal) |
| -Borrower | recourse this _____ day of _____ 20__ -Borrower |

60401435
VMP -1R (0210)

Page 2 of 2

Freedom Mortgage Corporation

Stan Moskowitz/cpa
Treasurer/Chief Financial Officer

**FILED Jan 11, 2016**

STEVEN K. EISENBERG, ESQUIRE (009221995)
JACQUELINE F. MCNALLY, ESQUIRE (020402005)
DAVID M. LAMBROPOULOS, ESQUIRE (040322006)
MICHAEL J. REILLY, ESQUIRE (042522012)
LUCAS M. ANDERSON, ESQUIRE (014342011)
JOHN KOLESNIK, ESQUIRE (012412010)
JUSTIN M. STRAUSSER, ESQUIRE (090692014)
CHRISTOPHER M. CAMPOREALE, ESQUIRE (072082013)
STEFANIE MALONE-ZEITZ, ESQUIRE (107872014)
SALVATORE CAROLLO, ESQUIRE (007012001)
FRANK J. KEENAN, ESQUIRE (022041994)
STERN & EISENBERG, PC
1040 N. KINGS HIGHWAY, SUITE 407
CHERRY HILL, NJ 08034
TELEPHONE: (609) 397-9200
FACSIMILE: (856) 667-1456
ATTORNEYS FOR PLAINTIFF
FILE NO. 525.000289 KAB/KLM

| | |
|---|---|
| UMB Bank, National Association, not in its individual capacity but solely as legal title trustee of MART Legal Title Trust 2015-NPL1 Plaintiff | **SUPERIOR COURT OF NEW JERSEY BURLINGTON COUNTY CHANCERY DIVISION** |
| v. | Docket No.: **F -001020-16** |
| Sandra Lopaz;<br>Mr. Lopaz, Unknown Spouse of Sandra Lopaz;<br>Capital one Bank USA NA;<br>US Equities Corp;<br>State of New Jersey;<br>Defendants | CIVIL ACTION<br><br>COMPLAINT IN<br>MORTGAGE FORECLOSURE |

NOTICE PURSUANT TO THE
FAIR DEBT COLLECTION PRACTICES ACT

THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. THIS NOTICE
IS SENT TO YOU IN AN ATTEMPT TO COLLECT THE INDEBTEDNESS REFERRED TO
HEREIN AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT
PURPOSE.

Unless you notify this office within 30 days after receiving this notice that you dispute the
validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify
this office in writing within 30 days from receiving this notice, this office will obtain verification
of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.
If you request this office in writing within 30 days after receiving this notice this office will
provide you with the name and address of the original creditor, if different from the current
creditor.

P.O. Box 55004
Irvine, CA 92619-2708
888.699.5600 toll free
949.341.0777 local
949.341.2200 fax
www.rushmorelm.com

Date: February 27, 2017

+ 0717821 000001724 09R45D 0926662
SANDRA LOPAZ
1612 WASHINGTON ST
CINNAMINSON NJ 08077-2623
||ıl|||ı|ıⁱⁱⁱⁱ||ı|ⁱⁱⁱⁱ|ı|ı|ıⁱⁱⁱ||ı|ı||ⁱⁱⁱ||||ⁱⁱ||||ı||

Loan Number: 7600495455
Property: 1612 Washington St
Cinnaminson NJ 08077

Dear Sandra Lopaz

The purpose of this correspondence is to discuss your mortgage loan for the property listed above. It is our understanding that your financial situation has changed. As your Mortgage Servicer, Rushmore Loan Management Services is focused on customizing alternatives to foreclosure for each customer's individual circumstances.

**IMPORTANT: AS OF THE DATE OF THIS NOTICE, OUR RECORDS SHOW THAT THE ABOVE REFERENCED MORTGAGE LOAN IS DELINQUENT. IF THIS MORTGAGE LOAN HAS BEEN PAID AND BROUGHT CURRENT SINCE THE DATE OF THIS NOTICE, PLEASE DISREGARD THIS LETTER.**



Pursuant to the terms of the referenced Security Instrument along with all riders thereto, you are hereby served notice of the following:

(a) Your Note and Security Instrument are presently in DEFAULT due to non-payment of the installment, which was due on 01-01-11 and any other installments, costs, or fees due.

(b) The total amount currently due is: $120,937.65 *
    Total Net Amount Due: $109,211.47
    Recoverable Corp Advance Balance: $11,726.18
    Less Unapplied Balance: $0.00

(c) You must now pay all past due payments, including any other installments, fees, charges, or other expenses that are due or become due at the time you cure this default. To cure this default, you must remit the TOTAL AMOUNT necessary to cure the default.

\*   Due to the default, there may be additional outstanding fees for which you are responsible which are unknown as of the date of this letter and therefore are not included above, but which were necessarily incurred to protect our interests in the property and are part of the amount you owe. Outstanding fees may include, but are not limited to, expenses for items such as escrow advances for property taxes, insurance, legal fees and costs including but not limited to those related to foreclosure activities, or other advances necessary and permissible under the Loan Documents. To receive the current total amount due inclusive of such fees, if any, please reach out directly to your single point of contact below.

**Short Refinance -** Allows you to refinance your mortgage at less than the remaining balance of your mortgage. The owner of your loan agrees to forgive some of the principal balance.

**Short Sale -** Allows you to sell your home for less than the remaining balance on your loan. The agreed upon sale price of the home must be acceptable to the owner of your loan. The debt may be satisfied at the agreed upon sale price and terms. Relocation assistance may be offered

**Deed-In-Lieu -** A voluntary deed of the ownership of your home to the owner of your loan in satisfaction some or all of your obligations under your loan. This action will not save your home but may aid you in qualifying for another mortgage in the future. There cannot be any problems with the title to your property, such as outstanding liens that cannot be satisfied. Relocation assistance may be offered.

**Reinstatement -** Payment of the total amount you owe in a lump sum payment and by a specific date. This brings your loan current. This may follow a forbearance.

**Consent to Judgment -** If you are unsuccessful at selling your home and did not qualify for a deed in lieu of foreclosure, a consent to judgment may be your best option. With this option you are agreeing to a quick foreclosure so you and your family can move on with your lives. Also, based on your circumstances, Rushmore may be able to assist you with relocation expenses.

**Settlement -** A mutual agreement between you (the borrower) and Rushmore Loan Management (the servicer) to accept less than what is currently owed so you may own the property outright.

Call us today to learn more about your options and instructions for how to apply. Again, I may be contacted at 469-458-5936.

If you have any additional questions you may also contact us at 1-888-504-7200 Monday through Thursday between the hours of 6:00 a.m. to 7:00 p.m., Friday 6:00 a.m. to 6:00 p.m. Pacific Time.



Sincerely,

STEVEN LARSON
Loss Mitigation
Rushmore Loan Management Services LLC

## Notice of Error Resolution & Information Request Procedures

The following outlines the Error Resolution and Information Request Procedures for your mortgage account at Rushmore Loan Management Services LLC.

If you think an error has occurred on your mortgage account or if you need specific information about the servicing of your loan, please write us at:

Rushmore Loan Management Services LLC
P.O. Box 52262
Irvine, California 92619

All written requests for information or notices of error should contain the following information:

1. Your name
2. Account number
3. Property Address
4. Description of the error and explanation as to why you believe it is an error OR a request for specific information regarding the servicing of your loan.
5. Current contact information so we may follow up with you.

## ADDITIONAL NOTICES

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.



## Item 4     Advisory Business

Roosevelt Management Company LLC ("RMC"), a Delaware limited liability company, is a
New York-based asset management firm focused on investments, directly or indirectly, in, and
the management of, U.S. (including Puerto Rico) residential mortgage loans ("Loans"),
foreclosed real estate ("REO"), excess mortgage servicing rights related to Loans ("Excess
MSRs"), residential mortgage-backed securities ("RMBS") and interests therein (collectively,
"Real Estate Related Assets"). RMC was founded in 2008 by a team of veteran mortgage
professionals with experience in pricing, due diligence, servicing, and restructuring of distressed
mortgage assets. RMC owns a residential mortgage loan originator and servicer, Rushmore
Loan Management Services LLC ("Rushmore"), which provides loan servicing services
throughout the United States, and indirectly owns Dakota Asset Services LLC ("Dakota"), which
provides REO management and disposition services. RMC's principal owner is Roosevelt
Senior Professional LLC, whose members are Clive Bode and Alan Waxman.

RMC provides investment management and advisory services to investment entities ("Clients")
investing primarily in Real Estate Related Assets. Typically, the Clients are owned or controlled
by alternative asset managers and their managed investment funds or other financial institutions.

RMC focuses on asset categories that utilize RMC's experience in the U.S. residential mortgage
market, as well as RMC's relationships with industry counterparties and partners and mortgage
loan servicers (including its subsidiary mortgage servicer Rushmore), and substantial analytical,
risk management and asset valuation capabilities. RMC typically identifies Real Estate Related
Assets available for sale from select relationships with banks, broker-dealers, governmental and
quasi-governmental agencies and other financial institutions, including Clients, as well as in
certain circumstances referral agents, and analyzes and values such Real Estate Related Assets
using various quantitative econometric variables and qualitative data internally generated and
obtained from third parties

RMC may perform functions related to risk management and due diligence, both in conjunction
with and/or subsequent to, identifying and recommending potential investment opportunities to
its Clients. RMC may perform asset level due diligence of the Real Estate Related Assets,
including compliance, legal risk, title and lien reviews, property valuation reviews, collateral and
credit underwriting reviews, as appropriate and as requested by the Client. RMC also may
negotiate the terms of each such investment transaction on behalf of its Clients as directed and
requested by the Client. Each of RMC's Clients determines the Real Estate Related Assets it
will acquire and the price at which those assets will be acquired. RMC does not have discretion
to make investment decisions on behalf of its Clients. Its advisory services are limited to (a)
analyzing and recommending Real Estate Related Assets for investment, (b) to the extent
requested and directed by the Client, providing services related to the structure of the investment,
which may include the use of certain entities, vehicles or trusts (collectively, "Vehicles") to
acquire, hold and/or finance certain Real Estate Related Assets, on behalf of the Clients, and (c)
providing ongoing services, which may include the monitoring, management and valuation of
certain Real Estate Related Assets. From time to time, RMC may provide additional services
requested by Clients in connection with Real Estate Related Assets on a negotiated basis.

| Sale | Loan Count | Unpaid Principal Balance | Winning Bidder |
|------|-----------|--------------------------|----------------|
| Freddie Mac 12/4/15 | 942 | 184,100,000 | Rushmore/Roosevelt |
| Freddie Mac 3/10/16 | 2574 | 538,900,000 | Rushmore Roosevelt |
| Freddie Mac 12/16 | 1155 | 222,800,000 | Rushmore/Roosevelt |
| HUD SFLS 2016-1 | 2331 | 358,409,164.52 | Rushmore/Roosevelt |
| HUD HVLS 2017-1 | 1661 | 323,693,691.45 | Rushmore/Roosevelt |
| HUD HVLS 2017-2 | 519 | 100,083,852.82 | Rushmore/Roosevelt |
| Totals | 9182 | 1,727,000,000+ | |

My Rushmore Chart sent to the DOJ, the CFPB & The NJ DA.

Rushmore/Roosevelt scoops us FHA, Fannie & Freddie delinquent loans for pennies on the dollar. They are a junk debt collector, not a creditor.

Sale results:
http://freddiemac.mwnewsroom.com/press-releases/freddie-mac-sells-1-1-billion-of-seriously-delinq-otcqb-fmcc-1234224

http://www.freddiemac.com/seasonedloanofferings/docs/npl_ms_ii_press_release_spo_mar_2017_fin al.PDF

https://www.hud.gov/sites/documents/SALE2REPORT.PDF

https://www.hud.gov/sites/documents/HVLS171SALERSLTSUMRPTRVSD.PDF

https://www.hud.gov/sites/documents/HVLS172SALERSLTSUM.PDF

Professor Geoff Walsh, National Consumer Law Center Report 2016. Professor Walsh coins the term "laundered Notes".

https://www.nclc.org/issues/opportunity-denied.html

STEVEN K. EISENBERG, ESQUIRE (009221995)
JACQUELINE F. MCNALLY, ESQUIRE (020402005)
DAVID M. LAMBROPOULOS, ESQUIRE (040322006)
SALVATORE CAROLLO, ESQUIRE (007012001)
MICHAEL J. REILLY, ESQUIRE (042522012)
LUCAS M. ANDERSON, ESQUIRE (014342011)
JUSTIN M. STRAUSSER, ESQUIRE (090692014)
JOHN M. KOLESNIK, ESQUIRE (012412010)
CHRISTOPHER M. CAMPOREALE, ESQUIRE (072082013)
STEFANIE MALONE-ZEITZ, ESQUIRE (107872014)
FRANK J. KEENAN, ESQUIRE (022041994)
STERN & EISENBERG, PC
1040 N. KINGS HIGHWAY, SUITE 407
CHERRY HILL, NJ 08034
TELEPHONE: (609) 397-9200
FACSIMILE: (856) 667-1456
ATTORNEYS FOR PLAINTIFF
OUR FILE NUMBER: 525.000289

| | |
|---|---|
| UMB Bank, National Association, not in its individual capacity, but solely as Legal Title Trustee for Mart Legal Title Trust 2015-NPL1 <br><br> Plaintiff <br><br> v. <br><br> Sandra Lopaz; et al. <br><br> Defendants | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION BURLINGTON COUNTY <br><br> Docket No.: F-001020-16 <br><br> CIVIL ACTION <br><br> PLAINTIFF'S RESPONSES TO DEFENDANT'S DEMAND FOR PRODUCTION OF DOCUMENTS |

**TO:** Sandra Lopaz
1612 Washington Street
Cinnaminson, NJ 08077

Defendant, Pro Se

### INTRODUCTION

Plaintiff, UMB Bank, National Association, not in its individual capacity, but solely as

Legal Title Trustee for Mart Legal Title Trust 2015-NPL1 by and through their undersigned

attorneys, Stern & Eisenberg, P.C., by way of responses and objections to Defendant, Sandra

1

26. Objection. Said request seeks information which is not relevant and is overly broad, unduly burdensome, intended to harass and not reasonably likely to lead to discoverable information. Without waiving said objection, Defendant is directed to Bates stamped documents # 1-323 attached hereto and incorporated herein.

27. Objection. Said request seeks information which is not relevant and is overly broad, unduly burdensome, intended to harass and not reasonably likely to lead to discoverable information. Without waiving said objection, see Plaintiff's complaint in mortgage foreclosure, and Bates stamped documents # 1-323 attached hereto and incorporated herein. Plaintiff further reserves the right to rely on any documentation it deems relevant to establish a *prima facie* case in mortgage foreclosure or to demonstrate its standing to prosecute this foreclosure action.

STERN & EISENBERG, P.C.

Dated:  `7·14·16`

BY: _____

Salvatore Carollo, Esq.
Attorneys for Plaintiff

8

MIN          1000730-0082948274-4
MERS Telephone: (888) 679-6377

# NOTE

**Multistate**

| FHA Case No. |
| --- |
| 351-5289431-703 |

November 13, 2008

**[Date]**

1612 Washington St
Cinnaminson, NJ 08077
**[Property Address]**

# ORIGINAL

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
Freedom Mortgage Corporation

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST



In return for a loan received from Lender, Borrower promises to pay the principal sum of
One Hundred Fifty Four Thousand Six Hundred Sixty and 00/100

Dollars (U.S. $ 154,660.00       ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of Six and One-Half
percent (       6.500   %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
January       ,2009      . Any principal and interest remaining on the first day of December
2038      , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at P.O. Box 8068, Virginia Beach, VA  23450-8068

or at such place as Lender may designate in writing
by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $       977.56       . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for
the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a
partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in
writing to those changes.

0082948274

**FHA Multistate Fixed Rate Note - 10/95**

VMP -1R (0210)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 2   60401435          Initials:

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four and No-Thousandths       percent (       4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)          _____ (Seal)
Sandra Lopez                     -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)          Pay to the order of _____ without   (Seal)
                                 -Borrower       recourse this ___ day of __ 20___   -Borrower

60401435                                         Freedom Mortgage Corporation
-1R (0210)                       Page 2 of 2     Stan Moskowitz/cpa
                                                 Treasurer/Chief Financial Officer

JPMorgan Chase Bank, N.A.

Pay to the Order of:
Without Recourse
JPMorgan Chase Bank, N.A.

Secretary of Housing and Urban Development.
Washington. D.C. and his/her Successors and Assigns

By: _Pഥ
Kayla Cooley/Vice President

CFR › Title 24 › Subtitle B › Chapter II › Subchapter B› Part 203 › Subpart B › Section 203.368

# 24 CFR 203.368 - Claims without conveyance procedure.

**eCFR**      **Authorities (U.S. Code)**      **Rulemaking**      **What Cites Me**

prev | next

## § 203.368 Claims without conveyance procedure.

**(a)**

**(1)** The requirements of this section apply to anyinsured mortgage subject to this subpart which was either insured pursuant to:

**(i)** A conditional commitment issued on or after November 30, 1983 or, as appropriate,

**(ii)** An application for mortgage insurance endorsement under the Single Family Direct Endorsement Program, as provided in § 203.255(b), where the property appraisal report was signed by the mortgagee's underwriter on or after November 30, 1983.

**(2)** The requirements of this section shall also apply to any other mortgages subject to this subpart where the mortgagee elects to provide the notice to HUD required by paragraph (d) of this section.

**(b)** Notwithstanding the provisions of paragraph (a)of this section, the requirements of this section do not apply if the mortgaged property has been damaged as set out in § 203.378.

**(c)** Nothing in this section shall affect any rights or obligations arising under the procedures set forth insubpart C of this part.

**(d)** After initiating proceedings to foreclose aninsured mortgage within the coverage of paragraph (a)(1) of this section by judicial, statutory, or other means authorized by the mortgage instrument, themortgagee shall furnish notice of the foreclosure to the Commissioner, containing such information as shall be prescribed by the Commissioner, together with a copy of the notice of sale, on or before the date of first publication, posting, or other notice. Themortgagee foreclosing an insured mortgage subject to this subpart and within the coverage of paragraph (a)(2) of this section may elect to become subject to this section by providing such notices to theCommissioner in accordance with the preceding sentence.

**(e)** Where notice of the foreclosure sale is provided pursuant to paragraph (d) of this section, theCommissioner may elect to cause the mortgagedproperty to be appraised and to give written notice to the mortgagee, not less than five days prior to the date of the foreclosure sale, of the Commissioner's estimate of the fair market value of the mortgagedproperty, less adjustments as the Commissioner may deem appropriate (which may include, without limitation, the Commissioner's estimate of holding costs and resale costs that would be incurred if title to the mortgaged property were conveyed to the Commissioner). Such amount is referred to hereafter as the "Commissioner's adjusted fair market value."

**(f)** If the Commissioner fails to provide notice of theCommissioner's adjusted fair market value to themortgagee not less than five days prior to the scheduled date of foreclosure sale, this section shall have no further application and §§ 203.355 through 203.367 shall apply: *Provided,* that a mortgageewhich receives the Commissioner's notice at any time prior to the foreclosure sale may waive late receipt by so notifying the Commissioner, in which case this section shall apply.

**(g)** If the Commissioner provides notice of theCommissioner's adjusted fair market value in accordance with paragraph (e) of this section the following shall be applicable:

**(1)** The mortgagee shall tender a bid at the foreclosure sale in the amount of theCommissioner's adjusted fair market value.

**(2)** If the mortgagee acquires title to themortgaged property pursuant to a bid at foreclosure sale in an amount equal to the Commissioner's adjusted fair market value, the mortgagee may elect to retain title to the property and to file a claim for the insurance benefits computed as provided in § 203.401(b).

**(3)** If a party other than the mortgagee acquires title to the mortgaged property either pursuant to a bid at foreclosure sale or through the redemption of the property in an amount not less than theCommissioner's adjusted fair market value, themortgagee may file a claim for the insurance benefits computed as provided in § 203.401(b).

**(4)** If the mortgagee acquires title to themortgaged property pursuant to a bid at foreclosure sale in an amount in excess of the Commissioner's adjusted fair market value, the mortgagee is deemed to have elected to retain title to the property and is limited to filing a claim for the insurance benefits computed as provided in § 203.401(b). In the event the mortgagee can showgood cause for having bid an amount in excess of the Commissioner's adjusted fair market value, theCommissioner may, at his discretion, waive the provisions of this subparagraph and allow themortgagee to convey title to the Commissioner and file a claim for the insurance benefits computed as provided in § 203.401(a). A mortgagee which has elected to follow the provisions of this section pursuant to paragraph (a)(2) of this section and bids an amount in excess of the Commissioner's adjusted fair market value shall not be subject to the provisions of this subparagraph, and may elect to retain or convey title in filing a claim for the insurance benefits.

**(5)** In any other case, the mortgagee may file a claim for insurance benefits only upon conveyance of title to the mortgaged property to theCommissioner.

**(h)** If the Commissioner provides timely notice of theCommissioner's adjusted fair market value in accordance with paragraph (e), the Commissionermay require the mortgagee to advertise the upcoming sale in addition to the standard legal notices which may be required by state law.

**(i)** Where a mortgagee files a claim for the insurance benefits without conveying title to the property to theCommissioner, as authorized by this section:

**(1)** Sections 203.358 through 203.367 shall not be applicable.

**(2)** The mortgagee shall assign to theCommissioner, without recourse or warranty, any or all claims which the mortgagee has acquired in connection with the mortgage transaction and as a result of the foreclosure proceedings or other means by which the mortgagee or party other than the mortgagee acquired such

24 CFR 203.368 - Claims without conveyance procedure; FUS Law | LII / Legal Information Institute

property, except such claims as may have been released with the approval of the Commissioner.

**(3)** The mortgagee shall forward to the Commissioner:

**(i)** Fiscal data pertaining to the mortgagetransaction;

**(ii)** The original credit and security instruments, if available, or a deficiency judgment, if any, duly assigned or endorsed by the mortgagee, without recourse, to the Commissioner; and

**(iii)** Any additional information or data which theCommissioner may require.

**(4)** The mortgagee shall retain all cash amounts held or deposited for the account of the mortgagoror to which the mortgagee is entitled under themortgage transaction that have not been applied in reduction of the principal mortgage indebtedness. Cash amounts shall be itemized and deducted from the claim pursuant to § 203.403. Receipts for disbursements are to be retained by the mortgageeand are to be made available upon request by theCommissioner.

**(5)** The mortgagee shall file its claim:

**(i)** Within 30 days after the mortgagee acquired good marketable title to the property; or

**(ii)** Within 30 days after a party other than themortgagee acquired good marketable title to the property; or

**(iii)** In redemption States, within 30 days after the mortgagor or another party redeemed the property or the redemption period has expired; or

**(iv)** Within such other time as may be determined by the Commissioner.

**(6)** In any case in which the insurance benefits paid include, pursuant to § 203.402(c), hazardinsurance premiums paid by the mortgagee, the portion of the hazard insurance premium allocable to the period after acquisition of title by themortgagee or a third party shall be deducted from the mortgage insurance benefits otherwise payable.

(Approved by the Office of Management and Budget under control number 2502-0347)
[ 52 FR 1327, Jan. 13, 1987, as amended at 61 FR 36453, July 10, 1996]

**CFR** > Title 24 > Subtitle B > Chapter II > Subchapter B> Part 207 > Subpart B > Section 207.251

# 24 CFR 207.251 - Definitions.

eCFR          Authorities (U.S. Code)          Rulemaking

prev | next

## § 207.251 Definitions.

As used in this subpart:

**(a)** The term *Commissioner* means the Federal Housing Commissioner.

**(b)** The term *act* means the National Housing Act, as amended.

**(c)** The term *mortgage* means such a first lien upon real estate and other property as is commonly given to secure advances on, or the unpaid purchase price of, real estate under the laws of the State, district or territory in which the real estate is located, together with the credit instrument or instruments, if any, secured thereby. In any instance where an operating loss loan is involved, the term shall include both the original mortgage and the instrument securing the operating loss loan.

**(d)** The term *insured mortgage* means a mortgagewhich has been insured by the endorsement of the credit instrument by the Commissioner, or his duly authorized representative.

**(e)** The term *contract of insurance* means the agreement evidenced by such endorsement and includes the terms, conditions and provisions of this part and of the National Housing Act.

**(f)** The term *mortgagor* means the original borrower under a mortgage and its successors and such of its assigns as are approved by theCommissioner.

**(g)** The term *mortgagee* means the original lender under a mortgage its successors and such of its assigns as are approved by the Commissioner, and includes the holders of the credit instruments issued under a trust indenture, mortgage or deed of trust pursuant to which such holders act by and through a trustee therein named.

# EXHIBIT C

**RECEIVED    TUESDAY 7/26/2016 5:26:09 PM 15111846**

**FILED Jul 27, 2016**

Steven K. Eisenberg ˟ˑ
Thomas E. Shea ˑ
Jacqueline F. McNally ˑˑ
David M. Lambropoulos ˑˑ
Margaret Cascino ˟
M. Troy Freedman ˑ
Evan Barenbaum ˟ˑ
Stacey A. Weisblatt ˟ˑ
Salvatore Carollo ˑˑ
Leslie J. Rase ˑ
Andrew J. Marley ˑ
Michael J. Reilly ˑ
Alexandra Saites ˑ
Lucas M. Anderson ˟ˑ
William E. Miller ˟ˑ
John M. Kolesnik ˑˑ
Justin M. Strausser ˑˑ
Thomas F. Gallagher ˟ˑ
Edward J. McKee ˟ˑ
Todd N. Robinson ˑ
Christopher M. Camporeale ˑ
Stefanie Malone-Zeitz ˑˑ
Frank J. Keenan ˑˑ

Richard F. Stern ˟ˑ

ˑ Admitted to practice in PA
ˑ Admitted to practice in NJ
ˑ Admitted to practice in NY
˟ Admitted to practice in MD
ˑ Of Counsel



Stern & Eisenberg PC

Stern & Eisenberg, PC
www.sterneisenberg.com

1040 N. Kings Highway
Suite 407
Cherry Hill, New Jersey 08034
(609) 397-9200
Facsimile: (856) 667-1456

1581 Main Street
Suite 200
Warrington, PA 18976
(215) 572-8111
Facsimile: (215) 572-5025

485 Route 1 South
Suite 110
Iselin, NJ 08830
(732) 582-6344
Facsimile: (732) 726-8719

4976 Transit Road #2
Depew, NY 14043
(732) 582-6344
Facsimile: (732) 726-8719

July 26, 2016

**VIA Lawyers Service**
Hon. Paula T. Dow, P.J. Ch.
Burlington County Superior Court
120 High Street
Mount Holly, NJ 08060

RE: UMB Bank, National Association, et al. v. Sandra Lopaz, et al.
    Docket Number: F- 001020-16

Dear Judge Dow:

As the Court is likely aware, this firm serves as legal counsel for Plaintiff in the above-

captioned matter. Kindly accept this letter brief in lieu of a more formal response in opposition to

1

Defendant, Sandra Lopaz's Motion to Declare Defendant's Request for Admissions be Deemed
Admitted.

### *Background*

On January 11, 2016, Plaintiff instituted the within foreclosure action by filing a
Complaint in Mortgage Foreclosure. On February 17, 2016, Defendant, Sandra Lopaz filed a
contesting Answer and Counterclaims. On March 28, 2016, Plaintiff filed its Answer to
Defendant's Counterclaims. Thereafter, on April 15, 2016, this Court entered a Case
Management Order. See Exhibit "A". On April 28, 2016, Defendant filed a Motion to Amend
Defendant's Answer and Counterclaims. Plaintiff chose not to oppose Defendant's Motion to
Amend and on May 27, 2016, this Court granted Defendant's motion.

On April 29, 2016, Plaintiff received Defendant's demand for production of documents.
See Exhibit "B". On May 2, 2016, Plaintiff served Defendant with a Request for Production of
Documents, Request for Admissions and Request for Answers to Interrogatories. See Exhibit
"C". On June 2, 2016, Plaintiff received Defendant's answers to Plaintiff's request for
Production of Documents and Answers to Plaintiff's Request for Admissions. See Exhibit "D".
On June 14, 2016, Defendant filed her Amended Answer and Counterclaims. On June 22, 2016,
Plaintiff received Defendant's Answer to Plaintiff's Interrogatories.

On July 14, 2016, Plaintiff served its responses to Defendant's Demand for Production of
Documents and was under the belief that discovery had been completed. See Exhibit "E" and
Certification of Counsel which is attached hereto. Subsequently, on July 26, 2016, Plaintiff
received Defendant's Motion to Declare Defendant's Request for Admissions be Deemed
Admitted and was made aware for the very first time that Defendant had previously served its
Request for Admissions upon Plaintiff's counsel. See Exhibit "F" and Certification of Counsel.

2

Following further investigation into Defendant's assertion that discovery was delinquent, our search revealed that this office did in fact receive Defendant's Request for Admission on May 7, 2016. However, due to an inadvertent mistake, oversight or clerical error committed by our incoming mail department, Defendant's Request for Admissions was lost and subsequently not scanned into this office's case management system or assigned to the responsible attorney for handling. See Certification of Counsel.

As a result, no attorney at this office was made aware of Defendant's Request for Admissions and therefore Plaintiff was unable to provide a response to same. Plaintiff's counsel vehemently apologizes to both this Court and Defendant for the administrative error that created this issue and has since addressed the internal mail procedures at this office to ensure that this kind of oversight does not happen again in the future. Notwithstanding the above, Plaintiff's responses to Defendant's Request for Admissions were immediately prepared and served on July 26, 2016 once this office actually became aware of their existence.

### *Discovery*

While Plaintiff concedes that it did not provide responses to Defendant's Request for Admissions within the time prescribed by Rule 4:22-1, its failure to do so can be solely attributed to a clerical error and subsequent loss of Defendant's discovery pleading. See Certification of Counsel. Moreover, in keeping with Defendant's focused strategy of trying to overwhelm Plaintiff with excessive motion practice and discovery demands, Ms. Lopaz never even bothered to contact this office to inquire why Plaintiff had not yet responded to her Request for Admissions despite the fact that Plaintiff had produced more than three hundred (300) pages of documents in its responses to Defendant's Demand for Production of Documents. Instead of contacting myself or another member of this office and alerting us that she had not yet received a

3

response to her Request for Admissions, Ms. Lopaz opted to simply file the instant motion in the hopes of somehow derailing what is an otherwise straightforward contested foreclosure matter. There was simply no notice of any kind provided to this office that discovery may have been delinquent. If Defendant's Request for Admissions had in fact not been lost and instead properly boarded into this office's case management system, Plaintiff's counsel would have promptly replied to Defendant's requests within the time proscribed by the Rules of Court so as to avoid having Defendant's sixty-seven (67) admission requests from potentially being wrongfully deemed admitted. Regardless of Defendant's attempts to gain a strategic advantage in this case through the unsavory gamesmanship and tactics that she has so far displayed, Plaintiff has now served Ms. Lopaz with Answers to Defendant's Request for Admissions. See Exhibit "G".

Plaintiff would also like to emphasize that the majority of Defendant's Request for Admissions are completely inappropriate and non-germane to the issues relevant in this mortgage foreclosure action. Notwithstanding this fact, Plaintiff has provided responses to same and is respectfully requesting that they be accepted as timely by this Court and Defendant's Request for Admissions not be deemed admitted for purposes of this litigation. Plaintiff anticipates the filing of its motion for summary judgment in the next few days and is hopeful that its dispositive motion will resolve this contested matter. Accordingly, Defendant's Motion should be denied in its entirety.

Respectfully submitted,

STERN & EISENBERG, PC

Salvatore Carollo, Esquire

Cc: Sandra Lopaz, Pro Se

4

# EXHIBIT D

**FILED Aug 01, 2016**

<u>PLEASE CHARGE THE FILING FEE TO OUR ACCOUNT #142755</u>
<u>ATTORNEY CHARGE REFERENCE NO.: 007012001</u>

STEVEN K. EISENBERG, ESQUIRE (009221995)
JACQUELINE F. MCNALLY, ESQUIRE (020402005)
DAVID M. LAMBROPOULOS, ESQUIRE (040322006)
**SALVATORE CAROLLO, ESQUIRE (007012001)**
MICHAEL J. REILLY, ESQUIRE (042522012)
LUCAS M. ANDERSON, ESQUIRE (014342011)
JUSTIN M. STRAUSSER, ESQUIRE (090692014)
JOHN M. KOLESNIK, ESQUIRE (012412010)
CHRISTOPHER M. CAMPOREALE, ESQUIRE (072082013)
STEFANIE MALONE-ZEITZ, ESQUIRE (107872014)
FRANK J. KEENAN, ESQUIRE (022041994)
STERN & EISENBERG, PC
1040 N. KINGS HIGHWAY, SUITE 407
CHERRY HILL, NJ 08034
TELEPHONE: (609) 397-9200
FACSIMILE: (856) 667-1456
**ATTORNEYS FOR PLAINTIFF**

| | |
|---|---|
| UMB Bank, National Association, not in its individual capacity but solely as legal title trustee of MART Legal Title Trust 2015-NPL1 | SUPERIOR COURT OF NEW JERSEY **BURLINGTON COUNTY CHANCERY DIVISION** |
| Plaintiff | DOCKET NO.: F-001020-16 |
| v. | CIVIL ACTION |
| Sandra Lopaz, et al. | NOTICE OF MOTION FOR AN ORDER GRANTING SUMMARY |
| Defendants | JUDGMENT AND STRIKING DEFENDANT'S ANSWER AND COUNTERCLAIMS |

To:   Sandra Lopaz
      1612 Washington Street
      Cinnaminson, NJ 08077

Pro Se Defendant, Sandra Lopaz

Please take notice that on **September 2, 2016 at 9:00 a.m.**, or as soon thereafter as counsel

may be heard, the undersigned shall apply to the Honorable Paula T. Dow, P.J.Ch. or such other

Chancery Division Judge as shall be hearing motions on that day at the Burlington County Superior Court, 120 High Street, Mt. Holly, NJ 08060, for an Order granting summary judgment for the relief demanded in the Complaint and striking Defendant's Answer and Counterclaims with prejudice.

PLEASE TAKE FURTHER NOTICE that in support of the motion, Plaintiff will rely upon the enclosed Brief in Support, Certification in Support, Statement of Material Facts and the proposed form of Order submitted herewith.

Pursuant to R. 1:6-2(d), the undersigned:

☐ requests oral argument.

☐ waives oral argument and consents to disposition on the papers.

☒ waives oral argument unless timely opposition is properly filed.

STERN & EISENBERG, PC

BY: _____
Salvatore Carollo, Esquire
Attorneys for Plaintiff

Date: July 29, 2016

**RECEIVED     MONDAY 8/1/2016 10:09:29 AM 15129388**

# EXHIBIT
# A



MIN
MERS Telephone:

**Multistate**                    NOTE                    FHA Case No.

November 13, 2008
                [Date]

1612 Washington St
Cinnaminson, NJ 08077
[Property Address]

# ORIGINAL

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
Freedom Mortgage Corporation

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of
One Hundred Fifty Four Thousand Six Hundred Sixty and 00/100

Dollars (U.S. $ 154,660.00       ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of Six and One-Half
percent (        6.500   %) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
January          , 2009        . Any principal and interest remaining on the first day of December
2038      , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at P.O. Box 8068, Virginia Beach, VA  23450-8068
or at such place as Lender may designate in writing
by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $        977.56        . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for
the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a
partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in
writing to those changes.

FHA Multistate Fixed Rate Note - 10/95

VMP® -4R (9210)
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 2

**EXHIBIT**
*A*

**6. BORROWER'S FAILURE TO PAY**

    **(A) Late Charge for Overdue Payments**

        If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four and No-Thousandths    percent (     4.000 %) of the overdue amount of each payment.

    **(B) Default**

        If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

    **(C) Payment of Costs and Expenses**

        If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

    Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

    Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)        _____ (Seal)
Sandra Lopez       -Borrower                                   -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                   -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                   -Borrower

_____ (Seal)      Pay to the order of _____ without  (Seal)
                             -Borrower    recourse this ____day of __20__ -Borrower
                                              Freedom Mortgage Corporation

-1R (0210)                           Page 2 of 2            Stan Moskowitz/cpa
                                                            Treasurer/Chief Financial Officer

# EXHIBIT E

Steven K. Eisenberg **
Thomas E. Shea *
Jacqueline F. McNally **
David M. Lambropoulos **
Margaret Cascino *
M. Troy Freedman *
Evan Barenbaum *
Stacey A. Weisblatt *
Salvatore Carollo *
Leslie J. Rase *
Andrew J. Marley **
Michael J. Reilly *
Alexandra Saites *
Lucas M. Anderson **
William E. Miller **
John M. Kolesnik **
Justin M. Strausser **
Thomas F. Gallagher **
Edward J. McKee **
Todd N. Robinson *
Christopher M. Camporeale *
Stefanie Malone-Zeitz **
Frank J. Keenan **



Stern & Eisenberg PC

**Stern & Eisenberg, PC**
*www.sterneisenberg.com*

1040 N. Kings Highway
Suite 407
Cherry Hill, New Jersey 08034
(609) 397-9200
Facsimile: (856) 667-1456

1581 Main Street
Suite 200
Warrington, PA 18976
(215) 572-8111
Facsimile: (215) 572-5025

485 Route 1 South
Suite 110
Iselin, NJ 08830
(732) 582-6344
Facsimile: (732) 726-8719

4976 Transit Road #2
Depew, NY 14043
(732) 582-6344
Facsimile: (732) 726-8719

Richard F. Stern **

* Admitted to practice in PA
* Admitted to practice in NJ
* Admitted to practice in NY
+ Admitted to practice in MD
* Of Counsel

November 4, 2016

**VIA Lawyers Service**
Hon. Paula T. Dow, P.J. Ch.
Burlington County Superior Court
120 High Street
Mount Holly, NJ 08060

RE: <u>UMB Bank, National Association, et al. v. Sandra Lopaz, et al.</u>
    Docket Number: F- 001020-16

Dear Judge Dow:

As the Court is likely aware, this firm serves as legal counsel for Plaintiff in the above-

captioned matter. As per Your Honor's instruction and request at Oral Argument on November

4, 2016 on Defendant's Motion for Reconsideration of the Court's Order granting Summary

Judgment, Plaintiff submits the attached chain of title contained in Plaintiff's Motion for Summary Judgment. The attached certification of Natalie Owens and all exhibits annexed thereto clearly show that the chain of title to Plaintiff is proper, complete, and fully disclosed. As the Court may recall, Plaintiff's counsel was in possession of the original Note before and on the date of oral argument on Plaintiff's Motion for Summary Judgment. Same was available to Defendant for inspection at Plaintiffs' counsel's office prior to the hearing.

For a foreclosure Plaintiff to have standing to sue, it must demonstrate that it is in possession of the Note. See Deutsche Bank Trust Co. V. Angeles, 428 N.J. Super. 315, 319-20 (App. Div. 2012); Deutsche Bank Natn'l Trust Co. v. Mitchell, 422 N.J. Super., 214 224-25 (App. Div. 2011). New Jersey Courts have likewise found that standing is conferred by *either possession of the Note or an Assignment of Mortgage* that predates the original Complaint. See Angeles, supra, 428 N.J. Super at 318. As demonstrated by Paragraph 10 of the Owens Certification, the last Assignment of Mortgage into Plaintiff was recorded with the Burlington County Clerk on October 21, 2015. It is beyond dispute that both the execution and recording of that Assignment of Mortgage, and all prior, took place prior to the filing of Plaintiff's Complaint. Therefore, Defendant's contention that Plaintiff does not have standing to pursue the within foreclosure action is completely without merit.

Respectfully submitted,

STERN & EISENBERG, PC

Christopher M. Camporeale, Esquire

Cc: Sandra Lopaz, Pro Se

2

# EXHIBIT F

STEVEN K. EISENBERG, ESQUIRE (009221995)
JACQUELINE F. MCNALLY, ESQUIRE (020402005)
DAVID M. LAMBROPOULOS, ESQUIRE (040322006)
SALVATORE CAROLLO, ESQUIRE (007012001)
LUCAS M. ANDERSON, ESQUIRE (014342011)
JUSTIN M. STRAUSSER, ESQUIRE (090692014)
CHRISTOPHER M. CAMPOREALE, ESQUIRE (072082013)
STEFANIE MALONE-ZEITZ, ESQUIRE (107872014)
STEVEN P. KELLY, ESQUIRE (010032010)
JESSICA N. MANIS, ESQUIRE (114562014)
FRANK J. KEENAN, ESQUIRE (022041994)
CHRISTOPHER A. SALIBA, ESQUIRE (161512016)
BRANDON P. ACCARDI, ESQUIRE (138802014)
ANTHONY P. SCALI, ESQUIRE (034182007)
CHRISTOPHER M. MCMONAGLE, ESQUIRE (124402015)
DREW KARLBERG, ESQUIRE (181422016)
STERN & EISENBERG, PC
1040 N. KINGS HIGHWAY, SUITE 407
CHERRY HILL, NJ 08034
TELEPHONE: (609) 397-9200
FACSIMILE: (856) 667-1456
(COUNSEL FOR PLAINTIFF)
NJ-805.000254-16

| | |
|---|---|
| U.S. Bank National Association, not in its Individual Capacity, but Solely as Trustee for the RMAC Trust, Series 2016-CTT, | **SUPERIOR COURT OF NEW JERSEY BURLINGTON COUNTY CHANCERY DIVISION** |
| Plaintiff, | Docket No.: F-001020-16 |
| v. | CIVIL ACTION |
| Sandra Lopaz, et. al., | |
| Defendant(s). | *RULE* **4:64-2(d) CERTIFICATION OF DILIGENT INQUIRY AND ACCURACY OF FORECLOSURE DOCUMENTS AND FACTUAL ASSERTIONS** |

The undersigned Attorney identified below hereby certifies as follows:

1. I am an attorney at law duly licensed to practice in the state of New Jersey and am

affiliated with the law firm of Stern & Eisenberg, PC, the attorneys of record for the plaintiff in

the above-captioned residential mortgage foreclosure action. I am responsible for this mortgage

foreclosure action and am fully familiar with the pleadings and documents filed in this action and the facts set forth in this certification.

2. On 07/05/2017, I communicated by written communication with the following named employee(s) of Rushmore Loan Management Services, LLC, as Servicer for U.S. Bank National Association, not in its Individual Capacity, but Solely as Trustee for the RMAC Trust, Series 2016-CTT, who informed me that he/she personally reviewed the certification of amount due and the original or true copy of the note, mortgage and recorded assignments, if any, about to be submitted to the court; and that he/she confirmed the accuracy of those documents:

Name of employee(s):      Michael Bennett
Title of employee(s):      Assistant Secretary
Responsibilities of employee(s): **Reviews Servicing Records**

3. Based on my communication with the above-named employee(s) of plaintiff, or the plaintiff's mortgage loan servicer, as well as my own inspection of the documents filed with the court and other diligent inquiry, I execute this certification to comply with the requirements of *Rule* 4:64(d) and *Rule* 1:4-8(a).

4. I am aware that I have a continuing obligation under *Rule* 1:4-8 to amend this certification if a reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support for any factual assertion proffered by the plaintiff in any court filings and documents in this case.



STERN & EISENBERG, PC

BY:

☐ STEVEN K. EISENBERG, ESQUIRE (009221995)
☐ JACQUELINE F. MCNALLY, ESQUIRE (020402005)
☐ DAVID M. LAMBROPOULOS, ESQUIRE (040322006)
☐ SALVATORE CAROLLO, ESQUIRE (007012001)
☒ LUCAS M. ANDERSON, ESQUIRE (014342011)
☒ JUSTIN M. STRAUSSER, ESQUIRE (090692014)
☐ CHRISTOPHER M. CAMPOREALE, ESQUIRE (072082013)
☐ STEFANIE MALONE-ZEITZ, ESQUIRE (107872014)
☐ STEVEN P. KELLY, ESQUIRE (010032010)
☐ JESSICA N. MANIS, ESQUIRE (114562014)
☐ FRANK J. KEENAN, ESQUIRE (022041994)
☐ CHRISTOPHER A. SALIBA, ESQUIRE (161512016)
☐ BRANDON P. ACCARDI, ESQUIRE (138802014)
☐ ANTHONY P. SCALI, ESQUIRE (034182007)
☐ CHRISTOPHER M. MCMONAGLE, ESQUIRE (124402015)
☐ DREW KARLBERG, ESQUIRE (181422016)
Attorney for Plaintiff

Dated: 7/17/17

STEVEN K. EISENBERG, ESQUIRE 009221995
JACQUELINE F. MCNALLY, ESQUIRE 02042005
DAVID M. LAMBROPOULOS, ESQUIRE 040322006
SALVATORE CAROLLO, ESQUIRE - 007012001
MICHAEL J. REILLY, ESQUIRE 042522012
MICHAEL I. GOUDA, ESQUIRE 001052012
LUCAS M. ANDERSON, ESQUIRE 014342011
JUSTIN M. STRAUSSER, ESQUIRE – 090692014
CHRISTOPHER M. CAMPOREALE – 072082013
STEFANIE MALONE-ZEITZ, ESQUIRE – 107872014
STEVEN P. KELLY, ESQUIRE – 010032010
JESSICA N. MANIS, ESQUIRE – 114562014
FRANK J. KEENAN, ESQUIRE – 022041994
CHRISTOPHER A. SALIBA, ESQUIRE - 161512016
STERN & EISENBERG, PC
1040 N. KINGS HIGHWAY, SUITE 407
CHERRY HILL, NEW JERSEY 08034
TELEPHONE: (609) 397-9200
FACSIMILE: (856) 667-1456
ATTORNEYS FOR PLAINTIFF
FILE NO.: NJ-805.000254-16

| | |
|---|---|
| U.S. Bank National Association, not in its Individual Capacity, but Solely as Trustee for the RMAC Trust, Series 2016-CTT, | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION BURLINGTON COUNTY |
| Plaintiff, | |
| | DOCKET NO. F-1020-16 |
| v. | |
| Sandra Lopaz, et al., | CIVIL ACTION |
| Defendant(s) | **PROOF OF AMOUNT DUE CERTIFICATION AND SCHEDULE** |

I, Michael Bennett, being of full age do hereby certify as follows:

I am employed as an Assistant Secretary of Rushmore Loan Management Services LLC, (Rushmore), Plaintiff's Mortgage Loan Servicer and an authorized to make this certification on behalf of Rushmore. I make this certification based on my personal knowledge of the facts contained herein. My personal knowledge is based on my review of the Servicing Records described below.

    1.   In the regular performance of my job functions at Rushmore, I am familiar with the business records maintained by Rushmore for the purpose of servicing mortgage loans, collecting payments and pursuing any delinquencies (the "Servicing Records"). Rushmore's Servicing Records typically include electronic data compilations and imaged documents pertaining to the loans it services.

2.    Based on my training and my general knowledge of the processes by which they are created and maintained, Rushmore's Servicing Records were made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the ordinary course of the business activity regularly conducted by Rushmore. It is the regular practice of Rushmore's mortgage servicing business to make and update its Servicing Records.

3.    Based on my review of Rushmore's Servicing Records, including all loan documents, which consists of but is not limited to, the subject Note, Mortgage and any assignments and loan modifications, Plaintiff is entitled to enforce Defendant's Note and Mortgage.    Rushmore is responsible for servicing Defendant's mortgage account as attorney-in-fact for Plaintiff and is authorized to make this affidavit as the servicer for this loan.

4.    My review of the Servicing Records pertaining to Defendant's account reveals that as of May 5, 2017, the sum of $259,508.02 as itemized on the attached Schedule of Amount Due are due and owing.

5.    The Servicing Records pertaining to Defendant's account further reveal that there has been a default in the Defendant's Note and Mortgage, and that sufficient and certified moneys to cure the default have not been tendered, nor have there been any agreed extensions, modifications or agreements between the parties to delay this foreclosure action.

6.    Based on the attached records, there are no amounts to be set off or otherwise claimed against the indebtedness identified herein other than those set forth in the Schedule A as of this date.

7.    I further state that the property in the complaint filed in this cause cannot be divided and should be sold as a single tract.

I hereby certify that the foregoing statements made by me are true. I am aware if any statement made by me is willfully false, I am subject to punishment.

Rushmore Loan Management Services LLC, as
Attorney-in-Fact for U.S. Bank National Association,
not in its Individual Capacity, but Solely as Trustee
for the RMAC Trust, Series 2016-CTT

Date: 7-5-17

*Michael Bennett*
[Signature]

Michael Bennett
Name

Assistant Secretary
Title

MIN

MERS Telephone: (888) 679-6377

**Multistate**

# NOTE

FHA Case No.

November 13, 2008

[Date]

1612 Washington St
Cinnaminson, NJ 08077
[Property Address]

ORIGINAL

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
Freedom Mortgage Corporation

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
One Hundred Fifty Four Thousand Six Hundred Sixty and 00/100

Dollars (U.S. $ 154,660.00            ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of Six and One-Half
percent (            6.500   %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

   (A)  Time
      Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
January        , 2009        . Any principal and interest remaining on the first day of December
2038        , will be due on that date, which is called the "Maturity Date."

   (B)  Place
      Payment shall be made at P.O. Box 8068, Virginia Beach, VA  23450-8068

or at such place as Lender may designate in writing

by notice to Borrower.

   (C)  Amount
      Each monthly payment of principal and interest will be in the amount of U.S. $        977.56        . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.

   (D)  Allonge to this Note for payment adjustments
      If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

   ☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

   Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for
the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a
partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in
writing to those changes.

FHA Multistate Fixed Rate Note - 10/95

-1R (0210)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 2                                        Initials

CERTIFIED TRUE COPY
Justin M. Strausser
Attorney at Law

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four and No-Thousandths          percent (          4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
Sandra Lopaz                                    -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

_____ (Seal)
                                                      -Borrower

Pay to the order of _____ without                  (Seal)
recourse this ___day of __ 20__   -Borrower
Freedom Mortgage Corporation

Stan Moskowitz/cpa
Treasurer/Chief Financial Officer

-1R (0210)                          Page 2 of 2

| RECORDING INFORMATION SHEET | | 49 RANCOCAS RD, MT. HOLLY, NJ 08060 |
|---|---|---|
| INSTRUMENT NUMBER: **5174327** | DOCUMENT TYPE: **ASSIGNMENT OF MORTGAGE** | |

| | | |
|---|---|---|
| **Official Use Only** | Document Charge Type | ASSIGNMENT OF MORTGAGE |

| | | |
|---|---|---|
| | Return Address *(for recorded documents)* INGEO 1300 NORTH 200 EAST, SUITE 118 LOGAN UT 84321 | |

TIMOTHY D. TYLER
BURLINGTON COUNTY

RECEIPT NUMBER
8282119
RECORDED ON
October 21, 2015 8:41 AM

INSTRUMENT NUMBER
5174327

BOOK: OR13194
PAGE: 8185

| | |
|---|---|
| **No. Of Pages** *(Excluding Recording Information and/or Summary Sheet)* | 3 |
| **Consideration Amount** | $0.00 |
| **Recording Fee** | $60.00 |
| **Realty Transfer Fee** | $0.00 |
| **Total Amount Paid** | $60.00 |
| **Municipality** | CINNAMINSON TWP |
| **Parcel Information** | **Block:** 1917 **Lot:** 4 |
| **First Party Name** | US BANK |
| **Second Party Name** | UMB BANK |

**Additional Information (Official Use Only)**

Ctrl Id: 5358549 Recording Clerk: jdauria

*************************** *DO NOT REMOVE THIS PAGE.* ***************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF BURLINGTON COUNTY FILING RECORD NCE.* ****************
****************** *RETAIN*

Book # OR 13194 Page # 8185 Inst. # 5174327

CERTIFIED TRUE COPY

**Justin M. Strausser**
Attorney at Law

## Burlington County Document Summary Sheet

| | |
|---|---|
| BURLINGTON COUNTY CLERK | **Transaction Identification Number** |
| 49 RANCOCAS RD | **Return Address** *(for recorded documents)* |
| MOUNT HOLLY NJ 08060 1317 | CHARLES A BROWN AND ASSOC DBA DOCSOLUTION 2316 SOUTHMORE AVE. PASADENA, TX 77502 |

| Official Use Only | | |
|---|---|---|
| | Submission Date *(mm/dd/yyyy)* | 10/15/2015 |
| | No. of Pages *(excluding Summary Sheet)* | 3 |
| | Recording Fee *(excluding transfer tax)* | $60.00 |
| | Realty Transfer Tax | $0.00 |
| | Total Amount | $60.00 |
| | Document Type    ASSIGNMENT OF MORTGAGE | |
| | Electronic Recordation Level   L2 - Level 2 (With Images) | |
| | Municipal Codes   BURLINGTON COUNTY | 99 |
| | Bar Code(s) | |

**Additional Information (Official Use Only)**

***DO NOT REMOVE THIS PAGE.***
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

## Burlington County Document Summary Sheet

| | | | | | | |
|---|---|---|---|---|---|---|
| **ASSIGNMENT OF MORTGAGE** | **Type** | ASSIGNMENT OF MORTGAGE | | | | |
| | **Consideration** | | | | | |
| | **Submitted By** | CHARLES A BROWN AND ASSOC DBA DOCSOLUTION (CSC/INGEO SYSTEMS INC) | | | | |
| | **Document Date** | 08/19/2015 | | | | |
| | **Reference Info** | | | | | |

| **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** |
|---|---|---|---|---|
| OR | 11903 | 918 | | |

| **ASSIGNOR** | **Name** | **Address** |
|---|---|---|
| | US BANK | |
| | LVS TITLE TRUST I | |
| | CHARLES A BROWN ASSOCIATES PLLC | |
| | DOCSOLUTION INC | |

| **ASSIGNEE** | **Name** | **Address** |
|---|---|---|
| | UMB BANK | |
| | MART LEGAL TITLE TRUST 2015-NPL1 | |
| | SANDRA LOPAZ | |

**Parcel Info**

| **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
|---|---|---|---|---|---|
| | | | | | |

*• DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Book # OR 13194 Page # 8185 Inst. # 5174327

Prepared by, Recording Requested By and Return to:
Charles Brown
Brown & Associates
2316 Southmore
Pasadena, TX 77502
713-941-4928
Loan: .
Client ID: Pimco/AOL

# ASSIGNMENT OF MORTGAGE

*FOR VALUE RECEIVED*, US BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL
CAPACITY, BUT SOLELY AS LEGAL TITLE TRUSTEE FOR LVS TITLE TRUST I, ITS SUCCESSORS
AND ASSIGNS, whose address is 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107, does hereby assign
and transfer to UMB BANK, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT
SOLELY AS LEGAL TITLE TRUSTEE FOR MART LEGAL TITLE TRUST 2015-NPL1 forever and
without recourse, whose address is 1010 Grand Blvd., 4th Floor, Kansas City, MO 64106, all its right, title and
interest in and to the described Mortgage executed by SANDRA LOPAZ to MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FREEDOM MORTGAGE CORPORATION, ITS
SUCCESSORS AND ASSIGNS for $154,660.00 dated 11/13/2008 of record on 11/20/2008 in Book 11903 Page
918, in the BURLINGTON County Clerk's Office, State of NEW JERSEY.
Property Address: 1612 WASHINGTON ST, CINNAMINSON, NEW JERSEY 08077
Legal description: SEE ATTACHED EXHIBIT "A"

Executed this _____

US BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS
LEGAL TITLE TRUSTEE FOR LVS TITLE TRUST I BY AND THROUGH ITS ATTORNEY IN FACT,
CHARLES A. BROWN AND ASSOCIATES, P.L.L.C DBA DOCSOLUTION, INC.

By: _____  REGINA MONTS
Title: ASSISTANT SECRETARY

Power of Attorney recorded:

PASSAIC COUNTY ON 08/06/2015 ON BOOK D2669
PAGE:292 AND DOC NO ████████

Book # OR 13194 Page # 8185 Inst. # 5174327

## ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on _____ by REGINA MONTS the ASSISTANT SECRETARY of Charles A. Brown and Associates, P.L.L.C. dba DocSolution, Inc. as attorney in fact for US BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS LEGAL TITLE TRUSTEE FOR LVS TITLE TRUST 1, ITS SUCCESSORS AND ASSIGNS, who is personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned, on behalf of said limited liability company.

_____
Notary Public in and for the State of Texas
Notary's Printed Name: _____
My Commission Expires: _____

For $154,660.00 dated 11/13/2008

DARWIN PASLEY
Notary Public, State of Texas
My Commission Expires
June 07, 2017

## MORTGAGE FORECLOSURE AMOUNT DUE SCHEDULE

Note and Mortgage Dated:     November 13, 2008

Recorded in the Clerk's Office in and for Burlington County, on 11/24/2008, in Mortgage Book 11903, Page 918

Property Address:     1612 Washington Street, Cinnaminson, New Jersey 08077

Current Mortgage Holder(s):     U.S. Bank National Association, not in its Individual Capacity, but Solely as Trustee
for the RMAC Trust, Series 2016-CTT

### STATEMENT OF AMOUNT DUE

| | |
|---|---|
| Unpaid Principal Balance as of 1/1/2011 | $170,186.25 |
| Interest from 12/1/2010   to  5/5/2017 | $49,225.33 |
| Late Charges from 1/1/2011   to  1/11/2016 | |
| | $0.00 |

ADVANCES THROUGH May 5, 2017  for:

| | | |
|---|---|---|
| Real Estate Taxes & Insurance | $39,980.94 | |
| **Sub-total of Advances** | $39,980.94 | |
| | | |
| **Net Advances** | | $39,980.94 |
| Property Preservations | | $0.00 |
| Property Inspections | | $115.50 |
| TOTAL DUE AS OF May 5, 2017 | | $259,508.02 |

*Note, interest is calculated to be paid a month in advance. As such, interest accrued 30 days before the actual default date.

Rushmore Loan Management Services, LLC, as
Attorney-in-Fact for U.S. Bank National Association,
not in its Individual Capacity, but Solely as Trustee
for the RMAC Trust, Series 2016-CTT

/s/ Michael Bennett

Date: July 5, 2017

Surplus Money: If after the sale and satisfaction of the mortgage debt including costs and expenses, there remains
any surplus money, the money will be deposited into the Superior Court Trust Fund and any person claiming the
surplus, or any part thereof, may file a motion pursuant to Court Rules 4:64-3 and 4:57-2 stating the nature and
extent of that person's claim and asking for an order directing payment of the surplus money. The Sheriff or other
person conducting the sale will have information regarding the surplus, if any.

Interest rate of 4.50% for 2348 days @ $20.98/diem

| Taxes | Amount |
|---|---|
| 4/13/2017 | 756.49 |
| 1/18/2017 | 1,013.80 |
| 11/22/2016 | 1,051.90 |
| 8/9/2016 | 1,051.90 |
| 4/14/2016 | 987.37 |
| 1/22/2016 | 987.37 |
| 10/16/2015 | 1,034.57 |
| 8/12/2015 | 1,034.57 |
| 4/15/2015 | 677.03 |
| 1/13/2015 | 940.17 |
| 10/8/2014 | 757.58 |
| 8/12/2014 | 757.58 |
| 4/23/2014 | 1,144.97 |
| 4/23/2014 | 1,122.75 |
| 10/11/2010 | 1,128.96 |
| 8/12/2010 | 1,128.96 |
| 4/6/2010 | 1,028.78 |
| 1/12/2010 | 1,028.79 |
| 10/13/2009 | 1,074.88 |
| 8/10/2009 | 1,074.88 |
| 7/3/2009 | 982.68 |

| Hazard Insurance | Amount |
|---|---|
| 12/28/2016 | 3,916.00 |
| 6/7/2016 | 974.39 |
| 12/29/2015 | 3,206.00 |
| 6/4/2015 | 918.10 |
| .6/4/2015 | 918.10 |
| 6/2/2015 | 918.10 |
| 12/12/2014 | 2,388.00 |
| 6/13/2014 | 891.62 |
| 10/9/2010 | 1,457.00 |
| 6/1/2010 | 579.98 |
| 11/4/2009 | 1,294.00 |
| 7/3/2009 | 565.24 |

| Mortgage Insurance | Amount |
|---|---|
| 12/4/2010 | 62.28 |
| 11/4/2010 | 62.28 |
| 10/4/2010 | 62.28 |
| 9/4/2010 | 62.28 |
| 8/4/2010 | 62.28 |
| 7/2/2010 | 62.28 |
| 6/4/2010 | 62.28 |
| 5/3/2010 | 62.28 |
| 4/2/2010 | 62.28 |
| 3/4/2010 | 62.28 |

| | |
|---|---|
| 2/5/2010 | 62.28 |
| 1/4/2010 | 62.28 |
| 12/4/2009 | 63.01 |
| 10/2/2009 | 63.01 |
| 9/4/2009 | 63.01 |
| 8/6/2009 | 63.01 |
| 7/3/2009 | 189.03 |

| Property Inspection | Amount |
|---|---|
| 5/4/2017 | 16.50 |
| 3/24/2017 | 16.50 |
| 2/24/2017 | 16.50 |
| 1/24/2017 | 16.50 |
| 12/30/2016 | 16.50 |
| 11/23/2016 | 16.50 |
| 10/26/2016 | 16.50 |

# EXHIBIT G

Steven K. Eisenberg **
Thomas E. Shea *
Jacqueline F. McNally **
David M. Lambropoulos **
Margaret Cascino **
M. Troy Freedman *
Evan Barenbaum **
Stacey A. Weisblatt **
Salvatore Carollo **
Andrew J. Marley **
Roland George *
Lucas M. Anderson **
William J. Miller **
Justin M. Strausser **
Edward J. McKee **
Christopher M. Campareale *
Stefanie Malone-Zentz **
Steven P. Kelly **
Jessica N. Manis **
Frank J. Keenan **
Brandon P. Accardi **
Christopher M. McMonagle **
Christopher Saliba *
Anthony P. Scali *
Todd R. Baltch
Drew Karlberg *
Paul S. Huntington **



Stern & Eisenberg. PC
www.sterneisenberg.com

1581 Main Street
Suite 200
Warrington, PA 18976
(215) 572-8111
Facsimile: (215) 572-5025

1040 N. Kings Highway
Suite 407
Cherry Hill, NJ 08034
(609) 397-9060
Facsimile: (856) 667-1456

485 B Route 1 South
Suite 330
Iselin, NJ 08830
(732) 582-6344
(516) 630-0288
Facsimile: (732) 726-8719

4970 Transit Road #2
Depew, NY 14043
(516) 630-0288
Facsimile: (732) 726-8719

**December 6, 2017**

Richard F. Stern *

* Admitted to practice in PA.
* Admitted to practice in NJ.
- Admitted to practice in NY.
- Of Counsel.

**Via Facsimile – 973-622-1240**
**Honorable Joseph L. Yannotti, J.A.D**
Superior Court of New Jersey
Appellate Division
Leroy F. Smith, Jr. Public Safety Complex
60 Nelson Place, 8th Floor
Newark, NJ 07102

**Via Facsimile – 201-659-0480**
**Honorable Harry G. Carroll, J.A.D**
Superior Court of New Jersey
Appellate Division
W. J. Brennan Courthouse
583 Newark Avenue, 3rd Floor
Jersey City, NJ 07306

RE:     UMS Bank, National Association vs. Sandra Lopaz, et al.
        Appellate Docket # A-0270-17 (Foreclosure Docket # F-001020-16 / S&E File # NJ 805.000254-16

Dear Judge Yannotti and Judge Carroll,

1

This firm represents Plaintiff/Respondent with respect to the above-referenced matter.  Please accept this letter brief in lieu of a more formal opposition to Defendant's Motion for Emergent Relief.

## Background

On November 13, 2008, Appellant, Sandra Lopaz, executed to Freedom Mortgage Corporation, a Note to secure the sum of $154,660.00.  To secure payment on said Note, the mortgagor, Sandra Lopaz executed to Mortgage Electronic Registration Systems, Inc., as nominee for Freedom Mortgage Corporation, a non-purchase money mortgage (the "Mortgage") of even date with the Note which was recorded with the Burlington County Clerk on November 24, 2008 in Book 11903, Page 918 thereby creating a lien.  Through a series of assignments plead in Plaintiff's complaint, the mortgage was ultimately assigned to the current Plaintiff.

On November 19, 2010, Appellant executed and delivered a loan modification agreement which adjusted the unpaid principal balance then due and owing to $170,665.13.  Subsequently, Appellant failed to make a single payment based on the terms of the permanent loan modification agreement and she defaulted on this loan on January 1, 2011.  The January 1, 2011 payment remained unpaid thereafter, and no part thereof has yet been paid despite demand. Therefore, in accordance with the acceleration clause provided in the mortgage, plaintiff elected that the entire principal sum, together with unpaid interest and advances, shall become due. On December 18, 2014, a Notice of Default and Intention to Foreclose (the "NOI") was mailed to Appellant at the mortgaged premises. Due to Appellant's failure to cure the delinquency, Respondent instituted this foreclosure action on January 11, 2016.  Defendant filed an Answer shortly thereafter and litigation ensued. Counsel for Plaintiff did serve responses to Defendant's discovery requests on July 11, 2016 and provided all discoverable items in Plaintiff's possession. **In turn, Appellant failed to provide responses to any of Plaintiff's discovery demands through the conclusion of the discovery end date which was July 8, 2016.**

2

(citing Angeles at 318 and Mitchell at 216, 225.) In an even more recent unpublished opinion, this Court rejected the defendants' characterization of its earlier decisions regarding the standard for proof to establish standing in *Mitchell* and *Angeles* and the Court found defendants' arguments to be without sufficient merit to even warrant any discussion. Bank of New York Mellon Trust Co., Nat. Ass'n v. Bastar, 2016 WL 3221990 (App. Div. 2016).

In the instant matter, the assignment into Plaintiff was executed and recorded prior to the filing of Plaintiff's complaint. Furthermore, the original "wet ink" note has been in Plaintiff's possession since September 9, 2014, a date well in advance of the complaint filing. As a matter of law, Plaintiff's standing has been perfected by the executed and recorded Assignment of Mortgage and through physical possession of the original note. Even ignoring the above, Plaintiff is the statutorily correct party to foreclose on the subject property by virtue of the last recorded assignment of record. Therefore, Appellants' challenge is without merit and this Court upon the appeal will find that the trial court committed no error in holding that Plaintiff has standing to proceed with foreclosure. The Defendant has absolutely NOT shown that she will be successful on appeal with regards to the standing issue. Likewise, the lower Court exhibited no error in holding that Plaintiff, an assignee of the debt, was immune to personal defenses of fraud and predatory lending.

## C. Relative Hardship of the Parties

The Defendant has not shown that the equities, at this point, tip in her favor. In fact, they tip heavily in favor of Plaintiff. The Defendant has enjoyed a mortgage-free, tax-free, and rent-free residence for almost seven (7) years. In that time, Plaintiff has shouldered the burden of all carrying costs and bore the expense of litigating Defendant's numerous, meritless motions. Plaintiff wishes to continue and finalize the foreclosure action by presenting the property at sale. Staying the sale at this point to an indefinite date places Plaintiff in a rather precarious situation as Plaintiff has spent

8

considerable money in preparing for the Sheriff's sale. Postponing it indefinitely will only cause further delay after the conclusion of the appeal if in fact it is perfected. If Plaintiff is permitted to continue to sale, the Defendant is not in immediate danger of eviction. In fact, she can easily apply to this Court for a stay of the eviction when the application is ripe. Defendant misses the fact that Plaintiff will still have to have a deed issued, then recorded, and will then have to file for a Writ of Possession. After the writ is issued, Plaintiff is at the mercy of the Sheriff's department to schedule an actual lock-out. This will not be a matter weeks; it will be a matter of months.

]

## Conclusion

Ms. Lopaz should not be permitted to delay the Sheriff's sale any further than she already has, especially since she does not offer to post a bond to cover Plaintiff's costs through the pendency of the appeal. By reason of the foregoing, Defendant's requested relief must be denied in its entirety as she has completely failed to point to a single instance where she will be successful on appeal, has failed to show that the equities tip in her favor, and failed to show that irreparable harm will befall her.

Very truly yours,

Christopher M. Camporeale, Esq.

CC: David J. Khawam, Esq (via Facsimile)
    Hon. Kathi F. Fiamingo, J.T.C. (via NJLS)

9



Global Corporate Trust Services
190 S. LaSalle Street
Chicago, IL, 60603

usbank.com

# NOTICE OF TRUST INSTRUCTION PETITION AND COURT HEARING DATE

*THIS TRANSMITTAL CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST TO THE BENEFICIAL OWNERS OF THE SUBJECT SECURITIES. PLEASE EXPEDITE RE-TRANSMITTAL TO SUCH BENEFICIAL OWNERS IN A TIMELY MANNER.*

## TO HOLDERS OF

### SECURITIES ISSUED PURSUANT TO THE TRANSACTIONS IDENTIFIED ON EXHIBIT A ATTACHED HERETO

(CUSIPs[*] listed on Exhibit A)

The purpose of this notice is to inform you as an investor in one or more of the residential mortgage-backed securitization ("RMBS") trusts identified on Exhibit A attached hereto (each, a "Trust" and collectively, the "Trusts") regarding a trust instruction proceeding filed in Minnesota state court by U.S. Bank National Association, solely in its separate capacities as trustee for each of the Trusts (in such capacities collectively, the "Trustee"), seeking court approval to enter into and perform under certain settlement agreements relating to the Trusts.

On July 16, 2012, the People of the State of California (the "People") filed a complaint (the "Complaint") in the Superior Court of the State of California, County of Los Angeles, Central District (the "California Court"), against U.S. Bank National Association, both in its individual capacity and in its capacities as trustee (in such capacities collectively, the "Trustee Defendant") for certain RMBS trusts (such trusts, the "Litigation Trusts") alleging, among other things, that approximately 190 properties owned by the Litigation Trusts (the "Properties") had not been maintained in compliance with the Los Angeles Municipal Code (the "Action"). The People also alleged that there were other foreclosed properties in the City of Los Angeles held by the Trustee Defendant that were not specifically named in the Complaint that also had such alleged violations. The Trustee Defendant has denied any and all wrongdoing, contending that it had no legal duty, obligation, or even authority to maintain the Properties under the relevant transaction documents. The Trustee Defendant filed a cross-complaint (the "Cross-Complaint") in the Action against the servicers for the Properties (the "Servicers").

---

[*] The Trustee is not responsible for the selection or use of the CUSIP Numbers. They are included solely for holder convenience.

| Number | Trust Name | Governing Agreements and Relevant Parties |
|--------|-----------|-------------------------------------------|
| 1976 | RMAC REMIC Trust Series 2016-2 ("RMAC 2016-2") | Pooling Agreement dated as of February 18, 2016 among U.S. Bank National Association (Trust/Securities Administrator), Wells Fargo Bank, N.A. (Custodian), Wells Fargo Bank, N.A. and Rushmore Loan Management Services LLC (Servicer) and Roosevelt Management Company LLC (Other Party) relating to the RMAC REMIC Trust Series 2016-2 |
| 1977 | RMAC REMIC TRUST, SERIES 2016-4 ("RMAC 2016-4") | Pooling Agreement dated as of April 28, 2016 among U.S. Bank National Association (Trust/Securities Administrator), Wells Fargo Bank, N.A. (Custodian), Nationstar Mortgage LLC and Rushmore Loan Management Services LLC (Servicer) and Roosevelt Management Company LLC (Other Party) relating to the RMAC REMIC TRUST, SERIES 2016-4 |
| 1978 | RMAC PASS-THROUGH TRUST, SERIES 2016-A ("RMAC 2016-A") | Pass-Through Trust Agreement dated as of December 18, 2015 among U.S. Bank National Association (Trust/Securities Administrator), Wells Fargo Bank, N.A. (Custodian) and Roosevelt Management Company LLC (Other Party) relating to the RMAC PASS-THROUGH TRUST, SERIES 2016-A |
| 1979 | RMAC Pass Through Trust Series 2016-B ("RMAC 2016-B") | Pass-Through Trust Agreement dated as of March 31, 2016 among U.S. Bank National Association (Trust/Securities Administrator), Wells Fargo Bank, N.A. (Custodian) and Roosevelt Management Company LLC (Other Party) relating to the RMAC Pass Through Trust Series 2016-B |
| 1980 | RMAC TRUST, SERIES 2016-CTT ("RMAC 2016-CTT") | Trust Agreement dated as of December 18, 2015 among U.S. Bank National Association (Trust/Securities Administrator), Wells Fargo Bank, N.A. (Custodian), Rushmore Loan Management Services LLC (Servicer) and Roosevelt Management Company LLC (Other Party) relating to the RMAC TRUST, SERIES 2016-CTT |
| 1981 | RMAC Grantor Trust Series 2016-3 ("RMAC Grantor Trust 2016-3") | Pooling Agreement dated as of March 31, 2016 among U.S. Bank National Association (Trust/Securities Administrator), Wells Fargo Bank, N.A. (Custodian) and Roosevelt Management Company LLC (Other Party) relating to the RMAC Grantor Trust Series 2016-3 |
| 1982 | RMAC GRANTOR Trust, Series 2015-2 (RPL) ("RMAC GRANTOR Trust, Series 2015-2 (RPL)") | Pooling Agreement dated as of June 5, 2015 among Roosevelt Mortgage Acquisition Company (Depositor), Wells Fargo Bank, N.A. (Trust/Securities Administrator) and Roosevelt Management Company LLC (Other Party) relating to the RMAC GRANTOR Trust, Series 2015-2 (RPL) |

Page 566 of 939

# EXHIBIT H

# Superior Court of New Jersey

## Appellate Division

Docket No. A-000270-17

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, not in its individual capacity, but solely as Trustee for the RMAC Trust, Series 2016-CTT, | : CIVIL ACTION<br>:<br>: ON APPEAL FROM THE<br>: ORDERS OF THE<br>: SUPERIOR COURT<br>: OF NEW JERSEY, |
| *Plaintiff-Respondent,* | : CHANCERY DIVISION,<br>: BURLINGTON COUNTY<br>: |
| vs. | : DOCKET NO. F-001020-16<br>: |
| SANDRA LOPAZ; MR. LOPAZ, UNKNOWN SPOUSE OF SANDRA LOPAZ; CAPITAL ONE BANK USA NA; US EQUITIES CORP; STATE OF NEW JERSEY, | : Sat Below:<br>:<br>: HON. PAULA T. DOW, P.J. Ch.<br>: and<br>: HON. PAUL INNES, P.J. Ch. |
| *Defendants-Appellants.* | : |

## BRIEF AND APPENDIX FOR PLAINTIFF-RESPONDENT U.S. BANK NATIONAL ASSOCIATION

STERN & EISENBERG, P.C.
*Attorneys for Plaintiff-Respondent*
 *U.S. Bank National Association*
1040 North Kings Highway, Suite 407
Cherry Hill, New Jersey 08034
(609) 397-9200
scarollo@sterneisenberg.com

*On the Brief:*
SALVATORE CAROLLO, ESQ.
Attorney ID# 007012001



**TABLE OF CONTENTS**

Page

APPENDIX TABLE OF CONTENTS....................................iii

TABLE OF AUTHORITIES............................................iv

PROCEDURAL HISTORY..............................................1

STATEMENT OF FACTS.............................................5

LEGAL ARGUMENT................................................12

I.   Standard of Review...................................12

II.  The Trial Court Committed No Abuse of Discretion
     in its Analysis of the Standard of Proof
     Required to Confer Standing Upon Plaintiff to
     Enforce the Note and Mortgage.......................17

     A.   Plaintiff's Proofs Demonstrate that UMB
          Bank, National Association, not in its
          Individual Capacity, but Solely as Legal
          Title Trustee for Mart Legal Title Trust
          2015-NPL1 was the Legal Holder of the Note
          when the Complaint was Filed, and Thus had
          Standing to Foreclose.........................22

     B.   The Plain Language of the Owens
          Certification Establishes That it is Made
          on Personal Knowledge and Amounts to
          Competent Proof in Support of Plaintiff's
          Claim of Ownership and Motion for Summary
          Judgment......................................26

III. The Trial Court was Correct in Holding that
     Defendant's Affirmative Defenses and
     Counterclaims were Barred by the Holder in Due
     Course Doctrine and there was no Genuine Issue
     as to Any Material Fact.............................28

     A.   Appellant's Claims Under the New Jersey
          Consumer Fraud Act are Time-Barred.............36

IV.  The Trial Court Committed No Error in Failing to
     Recognize that the Truth in Lending Act Permits
     Rescission Against Assignees as this Defense was
     Never Raised Below and is Not Applicable............37

V. The Court Committed no Error in Failing to
Recognize Defendant's Defenses and Counterclaims
Against the Plaintiff and its Loan Servicer as
the Subject Loan is a Conventional Rather than a
HUD Regulated Loan....................................40

A. Pursuant to R. 4:50-1, Defendant has not
Established Any Legitimate Basis for
Vacating Entry of Plaintiff's Final
Judgment and this Court Should not Consider
this Issue as it was Never Raised Below.........42

CONCLUSION......................................................46

## TABLE OF PROCEDURAL HISTORY

| Date | Event/Proceeding | Filed By | Appendix Page No. |
|------|------------------|----------|-------------------|
| 01/11/2016 | Complaint | Plaintiff | 1a-13a (Vol.I) |
| 06/14/2016 | Amended Answer, w/Defenses & Counterclaims | Defendant | 15a-33a (Vol.I) |
| 07/26/2016 | Amended Answer to Defendant's Counterclaims | Plaintiff | 35a-43a (Vol.I) |
| 08/01/2016 | Motion for Summary Judgment and Striking Defendant's Answer and Counterclaims | Plaintiff | 44a-129a(Vol.I) |
| 08/24/2016 | Opposition to Plaintiff's Motion for Summary Judgment | Defendant | 130a-199a (Vol.I)<br>200a-395a (Vol. II) |
| 08/29/2016 | Reply Brief to Defendant's Opposition to Plaintiff's MSJ | Plaintiff | 400a-416a (Vol. III) |
| 09/19/2016 | ORDER Granting Summary Judgment | COURT | 417a-428a (Vol. III) |
| 10/11/2016 | Motion for Reconsideration | Defendant | 429a-450a (Vol. III) |
| 10/27/2016 | Opposition to Defendant's Motion for Reconsideration | Plaintiff | 451a-461a (Vol. III) |

**6**

| 11/01/2016 | Reply to Plaintiff's Opposition to Defendant's Motion for Reconsideration | Defendant | 462a-469a (Vol. III) |
|------------|--------------------------------------------------------------------------|-----------|----------------------|
| 11/07/2016 | Supplemental Brief to Oral Argument | Plaintiff | 470a-472a (Vol. III) |
| 11/09/2016 | Supplemental Brief to Oral Argument | Defendant | 473a-477a (Vol. III) |
| 11/30/2016 | Order Denying Defendant's Motion for Reconsideration | COURT | 478a-485a (Vol. III) |
| 07/21/2017 | Motion for Final Judgment | Plaintiff | 486a-500a (Vol. III) |
| 08/11/2017 | Order Granting Final Judgment, Costs & Writ of Execution | COURT | 501a-510a |

FILED, Clerk of the Appellate Division, December 18, 2017, A-000270-17

Defendant's motion and entered an Order providing Ms. [illegible] additional time to file an Amended Answer and Counterclaims. Pa. 30-33. On June 14, 2016, Defendant filed an Amended Answer and Counterclaims. Da. 15a-33a.

On July 14, 2016, Plaintiff provided Defendant with responses to the demand for production of documents. In turn, Defendant failed to provide responses to any of Plaintiff's discovery demands. The discovery end date was July [illegible], 2016. Pa. 23-24. On July [illegible], 2016, Plaintiff filed an Answer to Defendant's Amended Counterclaims. Da. 35a-43a.

On August [illegible], 2016, Plaintiff filed its motion for summary judgment and to strike Defendant's Answer and Counterclaims. Da. 44a-129a. On August [illegible], 2016, Defendant filed her opposition to Plaintiff's Motion for Summary Judgment. Da. 130a-395a. On August [illegible], 2016, Plaintiff filed a reply brief to Defendant's Opposition to Plaintiff's Motion for Summary Judgment. Da. 400-416a. On September [illegible], 2016, oral argument was held on Plaintiff's summary judgment motion before the Honorable [illegible], P.J. Ch. where she reserved her decision until a later date. On September 9, 2016, [illegible] entered an Order granting Plaintiff's Motion for Summary Judgment, striking Defendant's Answer, dismissing the Counterclaims with prejudice and returning the action to the Office of Foreclosure to proceed as uncontested. Da. 417a-428a. A Final Judgment of Foreclosure was issued

I HEREBY CERTIFY THIS
TO BE A TRUE COPY.
*Timothy D Tyler*
COUNTY CLERK *CB*

Ꭽ

ASSIGNMENT OF MTGS
BOOK# 1998 PAGE#98
DATE: JUNE 29, 2011
ASSIGNED TO    JPMORGAN CHASE BANK
RECORDED BY: M.PERRY
TIMOTHY D TYLER, COUNTY CLERK

NJS- 1641

Record And Return To:
JRS Settlement Services, Inc.
380 Red Lion Rd.. Suite 103
Huntingdon Valley. PA  19006

After Recordation Return To:
Freedom Mortgage Corporation
Attn: Final Documents
P.O. Box 8001
Fishers. IN 46038-8001 ———[Space Above This Line For Recording Data]

**State of New Jersey**
This instrument was prepared by:
Freedom Mortgage Corporation

## MORTGAGE

FHA Case No.

351-5289431-703

MIN 1000730-0082948274-4

BURLINGTON COUNTY
CLERK
RECEIVED
2009 NOV 20  A 10: 01

THIS MORTGAGE ("Security Instrument") is given on  November 13, 2008
The Mortgagor is Sandra   Lopaz.

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is
organized and existing under the laws of Delaware, and has a mailing address and telephone number of P.O. Box
2026, Flint, MI 48501-2026, tel. (888) 679-MERS. Freedom Mortgage Corporation

("Lender") is organized and existing under the laws of In state of New Jersey                              , and
has an principal office and mailing address of 10500 Kincaid Drive, Suite 300, Fishers, IN
46037                                        . Borrower owes Lender the principal sum of
One Hundred Fifty Four Thousand Six Hundred Sixty and 00/100
                                             Dollars (U.S. $ 154,660.00           ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on December 1, 2038
                    . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,

FHA New Jersey Mortgage with MERS - 4/96                                                    0082948274
-4N(NJ) (0102).01             Amended 7/01

with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, Section 1 et seq., and upon such modification, shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security Instrument is $ 154,660.00                          . For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in Burlington

County, New Jersey:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of 1612 Washington St                                                        [Street]
Cinnaminson                           [City], New Jersey 08077          [Zip Code]  ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    **6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    **7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

    If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

    Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    **8. Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9. Grounds for Acceleration of Debt.**

        **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

            (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

            (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

        **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds. in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act")(12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider      ☐ Growing Equity Rider      ☐ Other [specify]
☐ Planned Unit Development Rider      ☐ Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          Sandra Lopez                    -Borrower

                                          _____ (Seal)
                                                                          -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                         -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                         -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                         -Borrower

STATE OF NEW JERSEY,                      Montgomery          County ss:

On this   13th  day of   NOV. , 2008 , before me, the subscriber, personally appeared

Sandra Lopez

                                                                    who, I am satisfied,
the person(s) named in and who executed the within instrument, and thereupon acknowledged that
signed, sealed and delivered the same as   her          act and deed, for the purposes
therein expressed.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KENNETH R. SLOMINE, Notary Public
Upper Moreland Twp., Montgomery County
My Commission Expires April 4, 2009

# Exhibit A

BEING known and designated as Lot 4, Block 1917 on the official Tax Maps of the Township of Cinnaminson and being more particularly described according to a Survey and Plan thereof made by Merle Hopkins Associates, Inc., Engineers and Surveyors of Maple Shade, New Jersey dated June 5, 1987 as follows, to wit:

BEGINNING at concrete monument for a corner to Tax Map Lot 1 in the northeasterly line of Washington Street (50 feet wide) at a distance of 104.60 feet measured in a southeasterly direction from the intersection of the said northeasterly line of Washington Street with the southeasterly line of Division Street (50 feet wide); thence

(1)     Extending from said point of beginning along the said Tax Map Lot 1 and partially along Tax Map Lot 2 in a northeasterly direction at right angles to Washington Street, a distance of 100.00 feet to a point for a corner to Tax Map Lot 5; thence

(2)     Extending along said Tax Map Lot 5 and along Tax Map Lot 6 in a southeasterly direction parallel with Washington Street, a distance of 75.00 feet to a point for a corner to Tax Map Lot 12; thence

(3)     Extending along said Tax Map Lot 12 in a southwesterly direction at right angles to Washington Street, a distance of 100.00 feet to a concrete monument for a corner in the aforementioned northeasterly direction of Washington Street; thence

(4)     Extending along the said northeasterly line of Washington Street in a northwesterly direction, a distance of 75.00 feet to the first mentioned point and place of beginning;

CONTAINING WITHIN SAID BOUNDS, Seven Thousand and Five Hundred (7,500) square feet of land;

BEING also known as Lots 311, 312 and part of Lots 9,10,11 and 12, Plan of North Pennsville.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 4 in Block 1917 on the Township of Cinnaminson Tax Map.

COMMONLY KNOWN AS 1612 Washington Street, Cinnaminson, NJ.

BEING the same premises which Thomas Lopaz and Sandra Lopaz by Deed dated February 14, 1994, and recorded March 23, 1994, in Book 4704, Page 250, granted and conveyed unto Sandra Lopaz, in fee.

# EXHIBIT I

STEVEN K. EISENBERG, ESQUIRE (009221995)
JACQUELINE F. MCNALLY, ESQUIRE (020402005)
DAVID M. LAMBROPOULOS, ESQUIRE (040322006)
SALVATORE CAROLLO, ESQUIRE (007012001)
LUCAS M. ANDERSON, ESQUIRE (014342011)
JUSTIN M. STRAUSSER, ESQUIRE (090692014)
CHRISTOPHER M. CAMPOREALE, ESQUIRE (072082013)
STEFANIE MALONE-ZEITZ, ESQUIRE (107872014)
STEVEN P. KELLY, ESQUIRE (010032010)
JESSICA N. MANIS, ESQUIRE (114562014)
FRANK J. KEENAN, ESQUIRE (022041994)
CHRISTOPHER A. SALIBA, ESQUIRE (161512016)
BRANDON P. ACCARDI, ESQUIRE (138802014)
ANTHONY P. SCALI, ESQUIRE (034182007)
CHRISTOPHER M. MCMONAGLE, ESQUIRE (124402015)
DREW KARLBERG, ESQUIRE (181422016)
STERN & EISENBERG, PC
1040 N. KINGS HIGHWAY, SUITE 407
CHERRY HILL, NJ 08034
TELEPHONE: (609) 397-9200
FACSIMILE: (856) 667-1456
(COUNSEL FOR PLAINTIFF)
NJ-805.000254-16

| U.S. Bank National Association, not in its Individual Capacity, but Solely as Trustee for the RMAC Trust, Series 2016-CTT, | **SUPERIOR COURT OF NEW JERSEY** |
|---|---|
| | **BURLINGTON COUNTY** |
| Plaintiff, | **CHANCERY DIVISION** |
| v. | Docket No.: F-001020-16 |
| Sandra Lopaz, et. al., | CIVIL ACTION |
| Defendant(s). | **FINAL JUDGMENT** |

THIS MATTER having been opened to the Court by Stern & Eisenberg, PC, attorneys

for the Plaintiff, and it appearing that the Summons and Complaint with any amendments thereto

were duly issued and served upon the Defendant(s) herein, Capital One Bank USA NA, Sandra

Lopaz, State of New Jersey, US Equities Corp and each of them if necessary, and that the

defaults of said Defendant(s) has/have been duly entered by the Clerk of the Court, except for

Defendant(s), Sandra Lopaz, who filed a contesting Answer, which was stricken by an Order Granting Summary Judgment and Striking Answer and Counterclaims dated September 9, 2016, and default was entered against Defendant(s), Sandra Lopaz, as a result of said Order Granting Summary Judgment and Striking Answer and Counterclaims, and that none of said Defendant(s) is an infant or an incompetent person;

IT IS, on this 11th day of __August_____, 2017, ORDERED and ADJUDGED that the Plaintiff is entitled to have the sum of $259,508.02, together with contract interest at the annual percentage rate of 4.50% on unpaid principal balance and advances totaling $210,167.19 from May 5, 2017 to __August 11, 2017__ and lawful interest thereafter, on the total amount due, with costs of suit to be taxed according to law, including a counsel fee in the sum of $ __2745.08_____ computed pursuant to R.R. 4:42-9(a) raised and paid out of the mortgaged premises described in the Complaint;

AND IT FURTHER APPEARING from the Certification filed by the Plaintiff herein that there is presently due and owing to the Plaintiff, as and for principal, interest, taxes and other expenses on the Note and Mortgage mentioned in the Complaint filed herein, the sum of $259,508.02 as of May 5, 2017;

AND IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff is entitled to have the aforesaid mortgage debt, together with interest and cost as aforesaid raised and paid out of the mortgaged premises described in the Complaint;

AND IT IS FURTHER ORDERED and ADJUDGED that the Plaintiff its assignee or purchaser at Sheriff's Sale, duly recover against the said Defendant(s) the possession of the premises mentioned and described in the said Complaint with the appurtenances and that a Writ of Possession issue thereon;

AND IT IS FURTHER ORDERED and ADJUDGED that the mortgaged premises be sold to raise and satisfy the several sums of money due to the Plaintiff herein the sum of $259,508.02, together with contract interest at the annual percentage rate of 4.50% on unpaid principal balance plus advances totaling $210,167.19 from May 5, 2017 to August 11, 2017 and lawful interest thereafter with the costs to be taxed, with lawful interest thereon;

AND IT IS FURTHER ORDERED and ADJUDGED that so much of said mortgaged premises as will be sufficient to satisfy said mortgage debt, interest and costs, be sold and that an Execution for that purpose duly issue out of this Court, directed to the Sheriff of the County of BURLINGTON commanding him to make sale according to law of the mortgaged premises described in the Complaint, and out of the monies arising from such sale that he pay to the Plaintiff herein its said debt with interest thereon as aforesaid, and costs with interest thereon as aforesaid; and in case more money shall be realized by the said sale than shall be sufficient to answer such several payments, that such surplus be brought into this Court to abide the further Order of this Court, and that the Sheriff make his report of sale without delay as required by the Rules of this Court;

AND IT IS FURTHER ORDERED and ADJUDGED that the Defendant(s), and each of them, stand absolutely debarred and foreclosed of and from any and all equity of redemption of, in and to so much of the said mortgaged premises as shall be sold, as aforesaid, under this Judgment;

This Judgment shall not affect the rights of any person protected by The New Jersey Tenant Anti-Eviction Act (N.J.S.A. 2A:18-61-1 et seq.), the right of redemption given the United States under 28 U.S.C. 2410, the limited priority rights for the aggregate customary condominium assessment for the six (6) month period prior to the recording of any association

lien as allowed by <u>N.J.S.A.</u> 38:23C-4.

/s/ Paul Innes, P.J.Ch.
Paul Innes, P.J.Ch.

Respectfully Recommended
R. 1:34-6 Office of Foreclosure

# EXHIBIT J

## LIMITED POWER OF ATTORNEY (SFLS 2014-1)

THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT ("HUD"), having an address of 451 7th Street, S.W., Washington, D.C. 20410, hereby appoints **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS LEGAL TITLE TRUSTEE FOR LVS TITLE TRUST I (LVS TITLE TRUST I)**, as its true and lawful Attorney-in-Fact to act in the name, place and stead of HUD solely for the purposes set forth below relating to the sale of non-performing mortgage loans purchased by **LVS TITLE TRUST I**, from HUD pursuant to the terms and conditions provided in the Conveyance, Assignment and Assumption Agreement ("CAA Agreement") for Single Family Loan Sale 2014-1 ("SFLS 2014-1"). This limited power of attorney is effective only for the Mortgage Loans, as defined by the CAA Agreement, listed on Schedule I of the CAA Agreement. The said Attorney-in-Fact is hereby authorized and empowered, as follows:

1. To endorse, on behalf of HUD, the Note or equivalent for each Mortgage Loan listed on Schedule I to **LVS TITLE TRUST I** where **LVS TITLE TRUST I**, bears full responsibility for ensuring such endorsements are in a form that complies with applicable local, state and federal law. The authorization for endorsement is strictly limited to endorsement of such Mortgage Loan promissory notes to **LVS TITLE TRUST I**. Any endorsement to any other entity other than **LVS TITLE TRUST I**, shall be void.

2. To execute, on behalf of HUD, an Assignment of Mortgage, Deed of Trust or equivalent for each Mortgage Loan listed on Schedule I to **LVS TITLE TRUST I** where **LVS TITLE TRUST I**, bears full responsibility for ensuring such assignments are in a form that complies with applicable local, state and federal law. The authorization for assignment is strictly limited to Assignment of Mortgage of Mortgage Loans to **LVS TITLE TRUST I**. Any assignment to any other entity other than **LVS TITLE TRUST I** shall be void.

This instrument is to be construed and interpreted as a limited power of attorney and does not empower or authorize the said attorney-in-fact to do any act or execute any document on behalf of HUD not specifically described herein.

The rights, powers, and authority of the Attorney-in-Fact granted in this instrument shall commence and be in full force and effect on the date hereof and such rights, powers and authority shall remain in full force and effect until 11:59 p.m. Eastern Time, on May 1, 2015.

**LIMITED POWER OF ATTORNEY (SFLS 2014-1) - Page 2**

**IN WITNESS WHEREOF**, HUD has caused this Limited Power of Attorney to be executed and delivered under seal by its duly authorized agent as of the 15th day of April, 2014.

SECRETARY OF HOUSING AND
URBAN DEVELOPMENT

By: _____
Erik Cribbs
Authorized Agent

**ACKNOWLEDGEMENT**

STATE OF    District of Columbia        )
                            )ss.
COUNTY OF    Washington        )

Before me, the undersigned, a Notary Public in and for the said County and State, personally appeared Erik Cribbs, Authorized Agent of the Asset Sales Office, Department of Housing and Urban Development and acknowledged that he/she is duly authorized to sign for the Department of Housing and Urban Development and has the authority to delegate such duties provided in the foregoing instrument. Furthermore, he/she acknowledged that he/she signed the foregoing instrument and that the same is his/her free and voluntary act and deed of said corporation. In testimony and witness whereof, I have hereunto set my hand and seal this 15th day of April, 2014.

District of Columbia : SS
Subscribed and Sworn to before me
this 15th day of April, 2014
Nikeisha Joyner-Wiggins, Notary Public, D.C.
My commission expires June 30, 2016

Notary Public



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-3000

OFFICE OF THE CHIEF HUMAN CAPITAL OFFICER

October 2, 2014

Ms. Sandra Lopaz
1612 Washington Street
Cinnaminson, NJ 08077

> RE:   Freedom of Information Act Request
> FOIA Control No.:   14-FI-HQ-01992

Dear Ms. Lopaz:

This letter is in response to your request dated August 3, 2014, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Specifically, you requested copies of documents regarding your Federal Housing Administration (FHA) case number, 351-5289431-703, pertaining to claims paid or the sale of the loan in SFLS 2014-Q1. The search period you specified is November 13, 2008, to August 3, 2014.

When responding to a FOIA request, the Department of Housing and Urban Development searches for responsive documents existing up to the date the request is received in the Department's FOIA Branch. Your request was received on August 4, 2014.

Your request is granted in full. A search within HUD was conducted and 15 pages were located that are responsive to your request. Enclosed are documents showing loan level data for 351-5289431-703, to include documents from the FHA Connection database.

For your information, your FOIA request, including your identity and any information made available, is releasable to the public under subsequent FOIA requests. In responding to these requests, the Department does not release personal information, such as home address, telephone number, or Social Security number, all of which are protected from disclosure under FOIA Exemption 6.

If you have any questions regarding this request, please contact Howard Rosenberg at (202) 402-5507. Thank you for your interest in the Department's policies and programs.

Sincerely,

Dolores W. Cole
Director for FOIA and
 Executive Correspondence
Office of the Executive Secretariat

Enclosures

www.hud.gov        espanol.hud.gov

 **FHA Connection**

Welcome SARAH MARTIN

### Single Family Claim Status

## *Duplicate Advice of Payment*

08/12/2014

JPMORGAN CHASE BANK NA
MANAGER FORECLOSURE DEPARTMENT
7255 BAYMEADOWS WAY
JACKSONVILLE   FL   322566851

DEAR SIR OR MADAM:
SUBJECT:  FHA CASE NUMBER.   351-5289431          ADVICE OF PAYMENT

PROPERTY ADDRESS:

1513 WASHINGTON ST
CINNAMINSON  NJ  0.

_OR NAME:         LOPAZ,SANDRA
SERVICER NAME:

| | | | | |
|---|---|---|---|---|
| PAYMENT TYPE: | FULL | MORTGAGEE REF. NO: | 1962679888 | |
| SECT OF ACT: | 0703 | CLAIM TYPE: | ASSIGNMENT | |
| SETTLEMENT DATE: | 11/13/2012 | SCHEDULE NUMBER: | 00308 | |
| DATE CLAIM REC'D: | 11/12/2013 | DUE DATE LAST INSTALLMENT: | 12/01/2010 | |

| (LINE NO.) ****DESCRIPTION**** | DEDUCTION | EXPENSE | INTEREST | RATE |
|---|---|---|---|---|
| (017) UNPAID PRINCIPAL BALANCE | | 170,186.25 | | |
| (107) ADJUSTED LOAN BALANCE | 0.00 | 0.00 | | |
| (108) SALE/BID/APPRAISAL VALUE | 0.00 | | | |
| (109) ESCROW BALANCE | 0.00 | | | |
| (110) TOTAL DISBURSEMENTS P&P | | 0.00 | 0.00 | |
| (111) TOTAL DISBURSEMENTS | | 17,452.07 | 0.00 | |
| (112) ATTORNEY/TRUSTEE FEES PD | | 0.00 | 0.00 | |
| (113) FORECL., ACQUIS., CONVY. | | 0.00 | 0.00 | |
| (114) BANKRUPTCY FEE | | 37.50 | 0.00 | |
| (115) RENTAL INCOME | 0.00 | | | |
| (116) RENTAL EXPENSE | | 0.00 | | |
| (117) TOTAL TAXES ON DEBD | | 0.00 | | |
| (27 OR 118) AMOUNT OF DAMAGE | 0.00 | | | |
| (119) ADJUSTED DAMAGE | 0.00 | 0.00 | | |
| (120) SPECIAL ASSESSMENTS | | 0.00 | 0.00 | |
| (121) MORTGAGE NOTE INTEREST | | | 0.00 | |
| FORBEARANCE (COINS. ONLY) | | | 0.00 | |
| (122) MORT. INSURANCE PREMIUM | | 2,002.67 | 0.00 | |
| (123) UNAPPLIED 235 ASSISTANCE | | | | |
| (124) OVERPAID 235 SUBSIDY | 0.00 | 0.00 | 0.00 | |
| (125) OVERHEAD COST | | 0.00 | 0.00 | |
| (126) UNCOLLECTED INTEREST | | | 0.00 | |
| (127) AMOUNT DUE FROM BUYER | 0.00 | | | |
| (128) AMOUNT OWED TO BUYER | | 0.00 | | |
| (129) CLOSING COSTS/ ADMIN FEE | | 0.00 | | |
| (130) APPRAISAL FEE | | 75.00 | 0.00 | |
| (131) DEF. JUDGMT COST & FEES | | 500.00 | 0.00 | |
| (999) COINSURANCE RESERVE AMT | | 0.00 | | |
| INT. FROM 02/01/2011 TO 08/01/2011 | | | 3,021.29 | .03580 |
| | | | | |
| TOTALS | 0.00 | 190,356.49 | 3,021.29 | |

| | | | | | |
|---|---|---|---|---|---|
| FHA SETTLEMENT AMOUNT: | 193,377.78 | | | | |
| LESS OFFSET AMOUNT : | 0.00 | | | | |
| LESS RESERVE AMOUNT(COINS): | 0.00 | | | | |
| PAPER PROCESSING FEE: | 0.00 | | | | |
| | ----------- | | | | |
| FHA DEBENTURE PAYMENT: | 0.00 | | | | |
| FHA EFT PAYMENT: | 193,377.78 | | | | |
| SUBJECT: | FHA CASE NO: 351-5289431 | | ADVICE OF PAYMENT ADJUSTMENTS | | |
| | MTGEE REF NO: | 1962679888 | SCHED: | 00308 STTLDT: 11/13/2013 | |

ADJUSTMENTS HAVE BEEN MADE TO YOUR CLAIM FOR THE REASONS SHOWN BELOW:

ITEM NO:                    REASONS:

31. INTEREST IS CURTAILED TO THE MORTGAGEE CURTAILMENT DATE SUBMITTED ON THE CLAIM. IF YOU ENTERED
DEBENTURE INTEREST IN COLUMN C, IT HAS BEEN DISALLOWED. HUD HAS CALCULATED THE DEBENTURE INTEREST YOU
ARE DUE. IF YOU CLAIMED AMOUNTS IN COLUMNS A OR B WHICH WERE NOT PAID, THE COSTS WERE NOT ALLOWABLE FOR
ASSIGNMENTS. IF AN AMOUNT WAS ENTERED IN BLOCK 27 OF THE PART A CLAIM, THAT AMOUNT HAS BEEN DEDUCTED
FROM THE CLAIM PAYMENT.

Questions ........ing this letter should be emailed to Single Family Claims at        FHA_SFClaims@hud.gov
Including ...ur Case No     .. Servicer ID, and the KEYWORDs "Advice of Payment Letter" in the SUBJECT line will help us
provide a quicker response.

---